[No. 81361-2.   En Banc.]
Argued June 10, 2008.     Decided November 26, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH DOUGLAS NETH, *Appellant*.

178

*David N. Gasch* (of *Gasch Law Office*), for appellant.

*Timothy S. O'Neill, Prosecuting Attorney*, and *Craig Juris, Deputy*; and *David B. Trefry*, for respondent.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

¶1  CHAMBERS, J. — The defendant was stopped for speeding. Neither he nor his passenger had any identification, and some of the information they provided the state patrol trooper was inconsistent. Because the defendant had some plastic baggies in his pocket, said he had several thousand dollars in cash in the car, and acted in ways the investigating trooper considered suspicious, the trooper called for a K-9 unit. The dog alerted for drugs. The trooper impounded the car and sought and received a search warrant. The search produced evidence of drug trafficking, which was used against the defendant at trial. In upholding the search warrant and admitting the evidence, the trial judge did not consider the K-9 dog's reaction because there was insufficient evidence of the dog's reliability. We conclude that, absent the evidence from the dog, there was not probable cause to issue the search warrant. We reverse the conviction and remand for further proceedings.

¶2  Joseph Neth and his girl friend, Marisa Vachon, were pulled over by a trooper of the Washington State Patrol for driving 68 miles per hour in a 60 miles per hour zone. Neth pulled his car to a stop in a parking area of a gas station in Goldendale, Washington. Neth was driving and Vachon was in the hatchback area with a dog. The trooper said Neth appeared nervous and stressed, was yelling at the dog, and became angry.

¶3  The trooper asked for identification, registration, and proof of insurance. Neth had none of these. He gave his name and date of birth, which turned up an outstanding arrest warrant for driving with a suspended license and

failure to appear. The trooper called for backup, handcuffed Neth, and searched him, finding several unused, clear plastic baggies, each about half the size of a sandwich bag, in his coat pocket. When asked about them, Neth did not answer. Neth was placed in the back of the patrol car while the trooper attempted to confirm the warrant.

¶4 The trooper told Neth he would be searching the car incident to arrest and asked if there was anything he should know about in the car. Neth said there was $2,500 or $3,500 in cash in the car that he was bringing to pay rent on a house in Goldendale that he was renting from his father. While waiting for confirmation on the warrant, the trooper interviewed Vachon, who said the pair was going to look for a house to rent. When told Neth had said he was going to pay rent on a house already rented, she replied she did not know if he had already rented a house. When asked, she said the pair had been dating for about a year.

¶5 Neth had given the trooper his father's name, although nothing was done with that information. Neth also informed the trooper that he had recently purchased the car. Later, a registration check confirmed that the car had recently been sold and that the last legal owner was someone other than Neth.

¶6 After about 10 minutes, word reached the trooper that the issuing agency would not confirm the arrest warrant. The trooper released Neth but told him to wait because he would be cited for not having proof of insurance. He also cited Vachon for not wearing a seat belt. It took approximately 30 minutes to write up the citations. The trooper testified the delay was because the pair's lack of identification required him to verify their license numbers and other information over the radio.

¶7 While the citations were being written, the K-9 officer and drug dog arrived and did a walk-around of Neth's car. The dog alerted three times. When Neth did not consent to a search, the trooper decided to impound the car and seek a search warrant. After receiving citations, both Neth and Vachon were released.

¶8 The next day, the trooper got the warrant. The search revealed $4,790 in various denominations of bills that the trooper testified appeared to be set up for making change; numerous baggies with crystals and residue, all of which field tested positive for methamphetamine; a glass pipe; a digital scale; several hypodermic needles; and two spoons with burnt residue.

¶9 Neth's motion to suppress was denied. The trial court found[1] the dog sniff should have been excluded from the probable cause determination because the affidavit did not contain enough information to establish the dog's reliability. (The affidavit says only that the dog was "[t]rained to recognize the odor of illegal narcotics." Clerk's Papers (CP) at 57.) However, the trial court found there was probable cause to issue the warrant even without the dog sniff. A jury found Neth guilty of possession of methamphetamine with intent to deliver. He was sentenced to 90 months' confinement. The Court of Appeals certified the case to this court.

## ANALYSIS

¶10 This case is before us because the question of whether a dog sniff amounts to a search under article I, section 7 of the Washington Constitution has not yet been answered. We took this case as a companion case to *State v. Buelna Valdez*, No. 80091-0 (Wash., argued June 10, 2008), to resolve that issue. But inasmuch as the trial court ruled that the magistrate should not have issued the warrant based on the dog sniff because of inadequate foundation that the dog was reliable, we conclude that the dog sniff is not before us.[2] What is before us is whether there existed,

---

[1] The court did not enter written findings and conclusions. We rely on the oral decision and the minutes.

[2] No error was assigned to this ruling on appeal. For purposes of this opinion, we assume without deciding that the trial court was correct both in finding the affidavit insufficient to establish the dog's reliability and in excluding that information from its subsequent probable cause analysis. *See* RAP 2.4(a), 10.3(a)(4). The American Civil Liberties Union of Washington, as amicus, argues that, in fact, scientific evidence supports the conclusion that the reactions of dogs are too

without the dog's evidence, probable cause, to support the search warrant.

¶11 We generally review the issuance of a search warrant only for abuse of discretion. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). Normally we give great deference to the issuing judge or magistrate. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994) (citing *State v. Huft*, 106 Wn.2d 206, 211, 720 P.2d 838 (1986)). However, at the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause. *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988); *Wong Sun v. United States*, 371 U.S. 471, 481-82, 83 S. Ct. 407, 414, 9 L. Ed. 2d 441 (1963); *State v. Amerman*, 84 Md. App. 461, 581 A.2d 19 (1990). Although we defer to the magistrate's determination, the trial court's assessment of probable cause is a legal conclusion we review de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

¶12 A search warrant should be issued only if the application shows probable cause that the defendant is involved in criminal activity and that evidence of the criminal activity will be found in the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (citing *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995)). The probable cause requirement is a fact-based determination that represents a compromise between the competing interests of enforcing the law and protecting the individual's right to privacy. *See generally Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949) (probable cause must be based on more than mere suspicion). The affidavit should be evaluated in a commonsense manner, rather than hypertechnically. *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003) (citing *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002)). But

---

unreliable to support probable cause findings. *See Illinois v. Caballes*, 543 U.S. 405, 411, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005) (Souter, J., dissenting); Mark Derr, *With Dog Detectives, Mistakes Can Happen*, N.Y. Times, Dec. 24, 2002, at F1. We do not reach that issue.

an affidavit in support of a search warrant must be based on more than mere suspicion or personal belief that evidence of a crime will be found on the premises searched. *Id.* Probable cause for a search requires a nexus between criminal activity and the item to be seized and between that item and the place to be searched. *Thein,* 138 Wn.2d at 140.

¶13 Our question is whether the facts available to the magistrate, other than the drug dog's alert, justified a reasonable belief, rather than mere suspicion, that evidence of a crime was located in Neth's car. The facts listed in the trooper's affidavit of probable cause/search warrant that he believed were indicative of drug trafficking are as follows:

1- The driver was overly nervous, yelling at times as I was talking to him.

2- He was driving a car that he could not prove he owns or rents.

3- He had no registration or insurance documents, or any transfer of ownership papers.

4- He had no identification or a wallet on him or in his vehicle and was traveling from Vancouver to Goldendale. Female passenger had no identification as well.

5- He made comments that he was renting a house in Goldendale but he did not know the exact location, or address of the residence, but still claimed to be working and residing in Ridgefield.

6- He voluntarily stated he had money in the vehicle but did not know the exact amount $2500 to $3500 dollars. The money is in cash, was not located on his or passengers person, and the subject did not have a wallet.

7- His girlfriend stated they were going to rent a house in Goldendale, she did not know that the house was already being rented, even though she had been dating him for a year.

8- Subject possessed clear plastic bags that drug traffickers are known to use for carrying illegal drugs.

9- The K-9 (Trained to recognize the odor of illegal narcotics) hit on the vehicle in 3 different locations and Sergeant

Bartowski of the Goldendale [police department] stated they were strong hits.

[10]- Subject is a convicted felon for delivery charges including possession of Heroin.

(Background on subject included.)

CP at 56-57.

¶14 These facts are unusual, and, taken together, they seem odd and perhaps suspicious. However, all of these facts are consistent with legal activity, and very few have any reasonable connection to criminal activity. We do not permit searches merely because people do not have proper identification or documentation, are nervous, or tell inconsistent versions of events. *See, e.g., State v. Coyne*, 99 Wn. App. 566, 574, 995 P.2d 78 (2000) (suspicious story is not reasonable suspicion justifying investigative detention); *cf. State v. Setterstrom*, 163 Wn.2d 621, 627, 183 P.3d 1075 (2008) (officer must have some basis beyond suspect's nervousness and lying to justify a frisk); *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000) (citing *United States v. Wald*, 208 F.3d 902, 907 (reasoning that most people, even innocent ones, are nervous when pulled over by police), *superseded on reh'g*, 216 F.3d 1222 (10th Cir. 2000)). Absent the dog's alert, the only facts that can be said to show a nexus connecting Neth's car to criminal activity are the plastic baggies, a relatively large sum of money in the car, and his criminal history.

¶15 The trooper stated that in his experience, clear plastic baggies are often used in delivery of illegal controlled substances. Other states have come to varying conclusions regarding the incriminating nature of clear plastic baggies. *See People v. Hilt*, 298 Ill. App. 3d 121, 123, 125-26, 698 N.E.2d 233, 232 Ill. Dec. 395 (1998) (empty, torn, knotted piece of baggie, in plain view, gave officer probable cause to search car because baggie was a unique container, officer had previous experience with such containers, and stop occurred in area known for drug transactions). *Contra Commonwealth v. Garcia*, 34 Mass. App. Ct.

645, 647, 650, 614 N.E.2d 1031 (1993) (plain view observation of empty plastic baggie on rear floor of vehicle did not provide probable cause to search interior). Plastic baggies have even been described as the "hallmark of an illicit drug exchange." *People v. McRay*, 51 N.Y.2d 594, 604, 416 N.E.2d 1015, 435 N.Y.S.2d 679 (1980) (exchange of glassine envelope in area known for drug trafficking amounts to probable cause).

¶16 But absent some other evidence of illicit activity, the mere possession of a few empty, unused plastic baggies in a coat pocket does not constitute probable cause to search an automobile, even when combined with nervousness, inconsistent statements, and a large sum of money in the car. Baggies are capable of use for lawful as well as unlawful purposes. *Commonwealth v. Rivera*, 27 Mass. App. Ct. 41, 43 n.3, 534 N.E.2d 24 (1989). Innocuous objects that are equally consistent with lawful and unlawful conduct do not constitute probable cause to search. *Cf. State v. Hughes*, 20 Or. App. 493, 502-03, 532 P.2d 818 (1975) (beakers, jars, scales, and rubber gloves are not probable cause justifying issuance of search warrant). More is required to rise to the level of probable cause that a crime is being committed.[3]

¶17 The trooper also relied on Neth's statement that he had a large amount of cash. It does seem unusual to have several thousand dollars in cash somewhere in the car rather than on one's person and to not have even a general idea how much cash there is. Like the pair's inconsistent explanations of their trip to Goldendale, it may have reasonably raised the trooper's suspicions, but with little more, it did not rise to the level of probable cause that a crime was being committed.

¶18 A history of the same or similar crimes may be helpful in determining probable cause, but without other

---

[3] Possession of a number of small baggies may well create reasonable suspicion justifying further investigation, but this fact alone does not rise to the level of probable cause. Additional information such as being in a high drug crime area, baggies with the appearance of having once contained illicit substances, or observations of transactions involving the baggies may well have been sufficient.

evidence, it also falls short of probable cause to search. *See State v. Clark*, 143 Wn.2d 731, 749, 24 P.3d 1006 (2001); *State v. Hobart*, 94 Wn.2d 437, 446, 617 P.2d 429 (1980). Otherwise, anyone convicted of a crime would constantly be subject to harassing and embarrassing police searches. *Hobart*, 94 Wn.2d at 446-47. Some factual similarity between the past crime and the currently charged offense must be shown before the criminal history can significantly contribute to probable cause. *See State v. Stone*, 56 Wn. App. 153, 158, 782 P.2d 1093 (1989) (presence of defendant's car at crime scene coupled with similarity between current burglary and defendant's prior burglaries established probable cause to search defendant's car); *see also Brinegar*, 338 U.S. at 161-62, 176-77 (defendant charged with illegal liquor transport in his car; prior arrest for illegal liquor transport in his car was relevant to probable cause determination).

¶19 In sum, we conclude these facts did not create probable cause to search Neth's car and the evidence obtained pursuant to the warrant should have been suppressed. Neth's conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.