# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | ) No. 74163-2-I |
| | ) |
| Respondent, | ) ORDER WITHDRAWING OPINION |
| | ) AND SUBSTITUTING OPINION |
| v. | ) |
| | ) |
| KENNETH J. TAYLOR, | ) |
| | ) |
| Appellant. | ) |

The court has determined that the opinion filed on January 25, 2016, should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that the opinion filed on January 25, 2016, be withdrawn and a substitute opinion be filed.

DATED this 8th day of February, 2016.

Trickey, J.

Verellen, ACJ

Schindler, J

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74163-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KENNETH J. TAYLOR, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 8, 2016 |

TRICKEY, J. — Kenneth J. Taylor appeals his conviction for one count of distributing methamphetamine to a person under the age of 18 with a school bus stop enhancement and one count of possession of methamphetamine with intent to deliver with a school bus stop enhancement. He challenges the validity of the warrant to search his home, the sufficiency of the charging information, the constitutionality of the jury instruction on reasonable doubt, and the trial court's instructions to the jury regarding verdict forms. Because his arguments lack merit, we affirm Taylor's convictions. But, because we agree with Taylor that the trial court erred by running his school bus stop enhancements consecutively to all other sentences and to each other, we remand for resentencing.

## FACTS

On January 8, 2014, Pacific County Sheriff's Deputy Ryan Tully interviewed 16-year-old B.W. at the hospital. B.W. had been arrested for a juvenile status offense and taken to the hospital because she was under the influence of methamphetamine, had chest pains, and was hyperventilating. B.W.'s arresting officer contacted Deputy Tully because of Deputy Tully's involvement with the Drug Task Force. B.W. told Deputy Tully that she had received the methamphetamine

from Kenneth Taylor and provided Deputy Tully with detailed information to support that claim.

Deputy Tully obtained a warrant to search Taylor's house based on B.W.'s information and his own history with Taylor. The search resulted in the seizure of methamphetamine.

Thereafter, the State charged Taylor by second amended information with one count of distributing methamphetamine to a person under the age of 18 with a school bus stop alleged enhancement and one count of possession of methamphetamine with intent to deliver with a school bus stop alleged enhancement.

The case proceeded to a jury trial. At trial, the court instructed the jury that reasonable doubt was "one for which a reason exists."[1] Following the jury's deliberations, the jury announced it had reached a verdict. However, the presiding juror had signed the verdict forms for the underlying charges, but not written whether they found Taylor guilty. After instructions from the court, described in greater detail below, the jury returned filled in verdict forms to the court. The jury found Taylor guilty on both counts and both school bus stop enhancements.

The court sentenced Taylor to 110 months confinement for the possession and distribution counts, to run concurrently, plus 48 months confinement for the two school bus stop enhancements. The court ran the two school bus stop enhancements consecutively to the sentences for the underlying offenses and consecutively to each other. Taylor appeals.

---

[1] Clerk's Papers (CP) at 37.

ANALYSIS

Validity of Search Warrant

Taylor contends that the trial court erred by admitting evidence obtained through an invalid search warrant. He argues that the affidavit in support of probable cause contained intentional material misrepresentations and that the affidavit did not establish probable cause because the informant was not reliable. We address each of these arguments in turn.

*Misrepresentations*

Taylor claims that Deputy Tully intentionally misrepresented his familiarity and relationship with Taylor in his search warrant affidavit. He argues that the trial court should have excised Deputy Tully's intentional material misrepresentations from the affidavit in support of the search warrant and then invalidated the search warrant. Because the trial court's finding that Deputy Tully did not misstate his relationship with Taylor was not clearly erroneous, we disagree.

The Fourth Amendment to the United States Constitution requires that police obtain a valid warrant before "embarking upon a search." Franks v. Delaware, 438 U.S. 154, 164, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law."

"[O]nly material falsehoods or omissions made recklessly or intentionally will invalidate a search warrant." State v. Chenoweth, 160 Wn.2d 454, 479, 158 P.3d 595 (2007). Once a defendant makes a preliminary showing that the affidavit includes such misrepresentations, he is entitled to a hearing, commonly known as

a Franks hearing. State v. Cord, 103 Wn.2d 361, 366-67, 693 P.2d 81 (1985) (citing Franks, 438 U.S. at 155-56). At that hearing, the defendant must prove his allegations by a preponderance of the evidence. Cord, 103 Wn.2d at 367.

We give great deference to the trial court's factual findings, including whether an affiant acted deliberately. State v. Clark, 143 Wn.2d 731, 752, 24 P.3d 1006 (2001). We will uphold these findings unless they are clearly erroneous. Clark, 143 Wn.2d at 752.

Here, Deputy Tully made a telephonic affidavit as part of his application for a search warrant. In response to the magistrate's initial skepticism at the reliability of the informant, Deputy Tully told the court that he had been Taylor's probation officer three years prior, that he knew Taylor "quite well," that Taylor had admitted to him that he was a drug user, and that he believed that Taylor had arrests for drug use or drug dealing.[2] After reviewing Taylor's criminal record, Deputy Tully retracted his belief that Taylor had drug convictions. Based on these facts, the magistrate issued the search warrant.

Taylor made a preliminary showing that Deputy Tully had intentionally overstated his relationship with Taylor. At the Franks hearing, Deputy Tully explained that Taylor was assigned to his coworker's caseload. However, because it was a very small office, Deputy Tully and his coworker frequently worked with each other's probationers. Deputy Tully had once arrested Taylor and talked to him for approximately an hour while driving him to jail. Deputy Tully also testified that he had had no intention to deceive the magistrate who issued the search

---

[2] Supplemental (Supp.) CP at 3.

4

warrant and had "answer[ed] [the magistrate's] questions as straightforward and appropriately" as he could.[3]

The trial court found that "Dep[uty] Tully's testimony was credible and truthful."[4] It also found that Deputy Tully's assertion that he knew Taylor "quite well" was based on his hour-long drive with Taylor and that "Dep[uty] Tully did not misstate his relationship with Mr. Taylor when Dep[uty] Tully indicated that he acted as Mr. Taylor's community corrections officer."[5] The court concluded that Deputy Tully "did not deliberately mislead the magistrate when he applied for the search warrant," or "recklessly disregard the truth in applying for a search warrant."[6]

We find nothing in the record to call the trial court's findings into question. The trial court did not err by not excising Deputy Tully's assertions from the affidavit or invalidating the warrant.

*Reliability of Informant*

Taylor next argues that the trial court erroneously denied his motion to suppress. Specifically, Taylor argues that the warrant does not establish probable cause because the affidavit did not establish that Deputy Tully's informant was reliable. Because Taylor has not rebutted the presumption that a named informant is reliable, we conclude there was no error.

Washington employs a two-part test for evaluating whether an informant's tips furnish probable cause. This test is derived from two Supreme Court cases,

---

[3] 1 Report of Proceedings (RP) (Apr. 4, 2014) at 15.
[4] CP at 101.
[5] CP at 99-101.
[6] CP at 102.

Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). The "Aguilar-Spinelli test" requires that the affidavit establish both the informant's basis of knowledge and the informant's credibility or reliability. State v. Jackson, 102 Wn.2d 432, 433, 436, 688 P.2d 136 (1984). A named informant is presumed reliable when the affiant discloses the informant's identity to the issuing judge and the informant "provides information in the form of facts and circumstances sufficiently detailed to establish personal knowledge." State v. Ollivier, 178 Wn.2d 813, 850, 312 P.3d 1 (2013), cert. denied, 135 S. Ct. 72, 190 L. Ed. 2d 65 (2014). That a named informant may be under criminal suspicion does not "vitiate the inference of reliability." State v. Northness, 20 Wn. App. 551, 558, 582 P.2d 546 (1978). "The defendant must rebut the presumption of reliability to overcome it." Ollivier, 178 Wn.2d at 850. If an informant is "'a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency, then the more strict rules'" for reliability apply. State v. Rodriguez, 53 Wn. App. 571, 576, 769 P.2d 309 (1989) (quoting 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.4(a), at 726-27 (2d ed. 1987)).

A "magistrate's determination of probable cause is entitled to considerable deference." Jackson, 102 Wn.2d at 4 42. "All doubts are resolved in favor of the warrant's validity." State v. Maddox, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). "[A]t the suppression hearing the trial court acts in an appellate-like capacity; its review, like ours, is limited to the four corners of the affidavit supporting probable cause." State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

Here, Taylor challenges the reliability of Deputy Tully's informant, B.W. Deputy Tully gave B.W.'s full name to the magistrate. Although B.W. was admittedly under the influence of methamphetamine during her interview with Deputy Tully, she was in custody for a juvenile status offense, not a drug charge. Deputy Tully did not promise anything to B.W. in exchange for the information. Nothing suggests she was under suspicion or acting in hopes of gaining leniency.

B.W. gave Deputy Tully detailed information to establish personal knowledge. B.W. described Taylor's use and storage of methamphetamine. B.W. told Deputy Tully that she had done methamphetamine at Taylor's house for about two months, including that day, and gave Deputy Tully Taylor's correct address. She described the container that Taylor kept methamphetamine in and described the location of this container in his house.

B.W. is entitled to a presumption of reliability. She was named to the magistrate and gave Deputy Tully sufficiently detailed information to demonstrate her personal knowledge. Taylor has not rebutted this presumption of reliability. It was not error for the trial court to deny Taylor's motion to suppress evidence seized pursuant to the warrant.

*Sufficiency of Information*

Taylor argues that the charging document was constitutionally deficient because it failed to include critical facts. Specifically, he claims that it was too vague because it did not include the location of the school bus stops that served as the basis for the enhancements. Because the information, even without those locations, gave Taylor notice of the conduct giving rise to the offense, we disagree.

7

A defendant has the constitutional right to know the "nature and cause of the accusation" against him. WASH. CONST. art. I, § 22 (amend. 10); U.S. CONST. amend. VI. Therefore, a charging document must include all essential elements of a crime. State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). The charging document must also "allege facts supporting every element of the offense." State v. Leach, 113 Wn.2d 679, 689, 782 P.2d 552 (1989). The defendant must "be apprised of the elements of the charged crime and the conduct of the defendant which is alleged to have constituted the crime." City of Seattle v. Termain, 124 Wn. App. 798, 803, 103 P.3d 209 (2004).

When a defendant does not challenge a charging document until after the verdict, we construe the charging document liberally in favor of validity. Kjorsvik, 117 Wn.2d at 102. We review the sufficiency of a charging document de novo. State v. Williams, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).

Here, the second amended information included the following school bus stop alleged enhancements for count I and count II, respectively:

> FURTHER, said distribution to a person under the age of eighteen took place within 1,000 feet of a school bus route stop designated by the school district in violation of RCW 69.50.435(1)(c), said enhancement adding an additional 24 months to the standard sentence range for the crime charged above.
>
>      . . . .
>
> FURTHER, said possession with intent to deliver took place within 1,000 feet of a school bus route stop designated by the school district in violation of RCW 69.50.435(1)(c), said enhancement adding an additional 24 months to the standard sentence range for the crime charged above, and raising the maximum fine to $50,000.00 and/or maximum imprisonment of 20 years.[7]

---

[7] CP at 30 (boldface omitted).

Taylor admits that the charging document contains the elements of the offenses charged. He claims, however, that the failure to include the location of the school bus stops renders the information constitutionally deficient. We disagree.

The information provides proper notice of the crimes Taylor is accused of and what conduct constituted those crimes, namely his possession and distribution of methamphetamine.

Taylor also claims that the State's failure to include the location of the bus stops renders the information too vague, and thus, constitutionally deficient. "Washington courts have repeatedly distinguished informations which are constitutionally deficient and those which are merely vague. If an information states each statutory element of a crime but is vague as to some other matter significant to the defense, a bill of particulars can correct the defect." State v. Noltie, 116 Wn.2d 831, 843, 809 P.2d 190 (1991) (footnotes omitted). "A defendant may not challenge a charging document for 'vagueness' on appeal if no bill of particulars was requested at trial." Leach, 113 Wn.2d at 687.

Taylor did not challenge the vagueness below or seek a bill of particulars. He cannot raise it for the first time on appeal.

## Reasonable Doubt Jury Instruction

Taylor contends that the trial court erred by giving jury instruction 3, which defined reasonable doubt. We disagree.

We review challenged jury instructions de novo. State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

Jury instruction 3 was the standard Washington Pattern Jury Instruction. 11

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC). This court recently upheld the use of this instruction in State v. Lizarraga, 71532-1-I, 2015 WL 8112963, at *20 (Wash. Ct. App. Dec. 7, 2015), as amended (Dec. 9, 2015). As we explained in that case, our Supreme Court expressly approved the instruction as a correct statement of the law and directed courts to use WPIC 4.01 to instruct on the burden of proof and the definition of reasonable doubt. Lizarraga, 2015 WL 8112963, at *20 (citing Bennett, 161 Wn.2d at 318); see also State v. Pirtle, 127 Wn.2d 628, 658, 904 P.2d 245 (1995) (concluding WPIC 4.01 "adequately defines reasonable doubt" and "has passed constitutional muster").

Here, Taylor claims that the instruction, by describing reasonable doubt as "one for which a reason exists," forces jurors to be able to articulate a reason for their doubt.[8] Thus, he argues, the instruction impermissibly shifts the burden of proof to the defense. We disagree for the reasons articulated in Lizarraga. The trial court's jury instruction was not erroneous.

## Judicial Coercion of Jury Verdict

Taylor argues that the trial court coerced the jury into returning a verdict. He contends that the jury's failure to completely fill in the verdict forms indicated that it had not come to a unanimous verdict. We disagree.

The right to a fair and impartial jury trial prohibits a judge from pressuring the jury into making a decision. State v. Boogaard, 90 Wn.2d 733, 736-37, 585 P.2d 789 (1978). "To prevail on a claim of improper judicial interference with the

---

[8] CP at 37.

verdict, a defendant 'must establish a reasonably substantial possibility that the verdict was improperly influenced by the trial court's intervention.'" State v. Ford, 171 Wn.2d 185, 188-89, 250 P.3d 97 (2011) (quoting State v. Watkins, 99 Wn.2d 166, 178, 660 P.2d 1117 (1983)). But first, he must establish that the jury was still deliberating. Ford, 171 Wn.2d at 189.

State v. Ford presents similar facts. 171 Wn.2d 185, 186-87, 250 P.3d 97 (2011). There, when the jury returned from its deliberations, the presiding juror confirmed that it had reached a unanimous verdict. Ford, 171 Wn.2d at 186-87. As the court began to read the verdict, it realized that one of the verdict forms was blank and sent the jury back to fill it in. Ford, 171 Wn.2d at 187. The jury returned with a properly filled in form, less than five minutes later. Ford, 171 Wn.2d at 187. The court held that the defendant had not made the required showing that the "jury was still within its deliberative process." Ford, 171 Wn.2d at 189. Thus, the defendant could not show that the court's actions had interfered with the jury's deliberations. Ford, 171 Wn.2d at 189-90.

We review a trial court's decision "whether the circumstances justify a discharge of the jury" for an abuse of discretion. State v. Jones, 97 Wn.2d 159, 163, 641 P.2d 708 (1982)

Here, the jury received separate verdict forms for counts I and II, and special verdict forms for the school bus stop enhancements. Special verdict form 1 stated:

> (THIS SPECIAL VERDICT IS TO BE ANSWERED ONLY IF THE JURY FINDS THE DEFENDANT GUILTY OF THE CRIME OF DISTRIBUTION OF METHAMPHETAMINE TO A PERSON UNDER THE AGE OF 18 AS CHARGED IN COUNT 1.)[9]

---

[9] CP at 63.

Special verdict form 2 included a similar instruction. Further, the court instructed the jury:

> If you find the defendant not guilty of these crimes, do not use the special verdict forms. If you find the defendant guilty, you will then use the special verdict forms.[10]

The instructions provided that the jury must be unanimous about the underlying convictions and the enhancements.

After approximately two hours of deliberations, the jury informed the bailiff that it had reached a verdict. The court brought the jury into the courtroom and confirmed this with the presiding juror. Before the court announced the verdict, however, it noticed a problem with the verdict forms. The court held a brief sidebar with the parties before it sent the jury out of the courtroom. It had instructed the jurors not to "continue deliberations" or "try to guess why" the court was returning them to the jury room.[11]

Outside the presence of the jury, the court explained that verdict forms A and B, which were signed by the presiding juror, had been left blank with respect to "Guilty" or "Not Guilty."[12] However, the jury answered in the affirmative on the special verdict forms, the instructions for which indicated that the forms should only be filled out in the event that the jury found the defendant guilty of the underlying charges.

After consulting with counsel for both parties, the court recalled the jury.[13]

---

[10] CP at 59.
[11] 4 RP (Apr. 16, 2014) at 97-98.
[12] 4 RP (Apr. 16, 2014) at 99-100.
[13] The trial court also commented, "I don't think that the Court -- or the justice system anticipates that the Court be hamstrung to where it can't try to make a reasonable clarification of -- of what the jury has done." 4 RP (Apr. 16, 2014) at 107. This echoes the

12

The court informed the jury that it had questions for the presiding juror, but it first cautioned the jury that it did "not want any member of the jury to take any of these questions to mean that the Court is inferring directly, indirectly in any way, shape, or form what [it] should or should not decide."[14] Then the following colloquy took place:

> THE COURT: [W]as the jury able to reach a verdict on Verdict Form A?
>
> [PRESIDING JUROR . . .]: Yes.
>
> THE COURT: Was the jury able to reach a verdict on Verdict Form B?
>
> PRESIDING JUROR . . .: Yes.
>
> THE COURT: . . . The Court is directing the jury to return to the jury room and complete Verdict Form A and Verdict Form B according to the answer given by the Presiding Juror that the jury was able to reach a verdict. Again, the Court is not suggesting indirectly or directly anything about what any verdict was or what any verdict should be put in any blank. So at this time please return to the jury room and please inform the Bailiff when you are ready to return. Thank you.[15]

When the jury returned, it had entered "guilty" on verdict forms A and B.[16] A poll of the jury confirmed the verdicts.

The presiding juror's repeated confirmations that the jury had reached a verdict indicate that the jury had finished deliberating before the court instructed the jury to complete verdict forms A and B. The only difference between the court's

---

majority's footnote in <u>Ford</u>, opining that "a jury should be able to fix mistakes without judicial coercion being claimed in every instance." 171 Wn.2d at 189 n.1. This appears to be one of those instances.

[14] 4 RP (Apr. 16, 2014) at 121.

[15] 4 RP (Apr. 16, 2014) at 121-22.

[16] 4 RP (Apr. 16, 2014) at 124.

actions here and the court's actions in Ford is that the court did not ask whether the verdict was *unanimous*. However, the jury instructions expressly required that any verdict be unanimous. Nothing in the record, including polling the jury members, indicates any disagreement among the jurors. We conclude, therefore, that the jury had reached a unanimous verdict on counts I and II before the court instructed it to complete verdict forms A and B. Accordingly, Taylor has not made a showing that any action by the court interfered with the jury's deliberations. There was no error.

Taylor argues that the court's conduct also violated Superior Court Criminal Rule (CrR) 6.15(f)(2). That rule provides:

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

When, as in this case, the jury has finished its deliberations, that court rule "has no application." Ford, 171 Wn.2d at 191. Therefore, the court did not violate CrR 6.15(f)(2).

## School Bus Stop Enhancements

Taylor argues that the trial court erred when it ran the two school bus stop enhancements consecutively to each other. Specifically, he asserts that RCW 9.94A.533(6) does not require the trial court to run his bus stop enhancements consecutively to other bus stop enhancements. Based on our State Supreme Court's recent decision in State v. Conover, we agree. 183 Wn.2d 706, 719, 355 P.3d 1093 (2015).

RCW 9.94A.533(6) provides for additional penalties when a defendant

commits certain drug related crimes within 1,000 feet of a school bus stop.

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 or 9.94A.827. All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.

In Conover, the court held that the statute requires the trial court to run a defendant's bus stop enhancements consecutively to the base sentences for each count, but not consecutively to each other. 183 Wn.2d at 719.

We review this claim de novo because it is a question of statutory interpretation. Conover, 183 Wn.2d at 711. We may review this sentence, even though Taylor did not object below, because "illegal or erroneous sentences may be challenged for the first time on appeal." State v. Ford, 137 Wn.2d 472, 477, 973 P.2d 452 (1999).

Here, the trial court imposed a 24-month school bus stop enhancement to each of Taylor's convictions. The trial court ran those enhancements consecutively to the sentences for the underlying counts and to each other. It appears that all parties assumed that the school bus stop enhancements must run consecutively to each other. This was error. We vacate the school bus stop enhancements and remand for resentencing for the trial court to determine whether the enhancements should be run consecutively or concurrently.

## Statement of Additional Grounds

In his statement of additional grounds for review, Taylor claims that instructing the jury to fill out the verdict forms violated his right to a fair trial and placed him in double jeopardy. We addressed the first claim earlier in this opinion.

Taylor's double jeopardy claim is similarly without merit.

> The double jeopardy clause applies where (1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law. . . .
> Jeopardy may be terminated in one of three ways: (1) when the defendant is acquitted, (2) when the defendant is convicted and that conviction is final, or (3) when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice.

State v. Strine, 176 Wn.2d 742, 752, 293 P.3d 1177 (2013). Jeopardy was never terminated before the court instructed the jury to fill out the verdict forms. The court did not enter a verdict of guilty or not guilty, nor did it discharge the jury. Thus, Taylor's claim of double jeopardy fails.

We affirm Taylor's convictions, but remand for resentencing.

WE CONCUR:

16