IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32706-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUSTIN D. TONIES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — We granted discretionary review of a suppression decision that the trial court certified, with agreement of the parties, as one involving a close and controlling question of law appropriate for immediate review under RAP 2.3(b)(4).

Walla Walla County sheriffs impounded a sports utility vehicle (SUV) left unattended in a city park's parking lot after hours, deployed a K-9 dog on the SUV 13 hours later, and, when the dog alerted, applied for and obtained successive search warrants. The first was for the SUV and the second was for a backpack in the SUV that belonged to Justin Tonies. It was found to contain incriminating drug evidence.

The State does not attempt to justify impoundment of the SUV as statutorily abandoned or on a community caretaking rationale. It must rely on an argument that a deputy sheriff had probable cause at the time of the seizure to believe that the SUV

contained contraband. Because he did not, we reverse the trial court's denial of the

motion to suppress and remand with directions to suppress the seized evidence.[1]

## FACTS AND PROCEDURAL BACKGROUND

At about 1:30 a.m. one morning in November 2013, Walla Walla Deputy Sheriff

Ian Edwards noticed a white SUV in the parking lot of the Prescott pool. The pool is part

of a city park. A sign near the parking lot indicated that the pool and park were closed at

that hour of night. Deputy Edwards approached the vehicle intending to determine

whether there was a community caretaking concern or to point out to any occupant that

the park was closed, and to ask them to move on.

Before he reached the SUV, two men walked toward him from the north side of

the parking lot. Deputy Edwards was familiar with one of the individuals, Walter

Walker, whom he knew had a fairly extensive criminal history that included drug

offenses. The deputy was not familiar with the other man, who was later identified as

Justin Tonies.

Deputy Edwards asked the men why they were in the park after hours and Mr.

Walker answered that they were waiting for "Donovan." Report of Proceedings (RP) at

---

[1] Mr. Tonies also argues on appeal that (1) a K-9 sniff is a search under article I, section 7 of the Washington Constitution requiring issuance of a warrant and (2) where a drug detection dog was trained to alert to what are now legal amounts of marijuana, its positive alert cannot establish probable cause to search. Since the chain of investigation violated the constitution at its inception, we need not reach the legality of subsequent steps.

2

7. He then stated that Mr. Tonies had just bought a drum set, located in the back of the SUV, and they had come out to pay for it. When the deputy asked who drove the SUV to the lot, neither Mr. Walker nor Mr. Tonies responded initially, and both men appeared to the deputy to be nervous. Mr. Walker then told Deputy Edwards that the SUV belonged to someone named "Amber," while Mr. Tonies said only that he believed the SUV belonged to a woman whose name he did not know. RP at 19.

As the three men spoke, another car pulled into the parking lot driven by 85-year-old Nada Bray, who was accompanied by her 23-year-old granddaughter, Sara. After some conversation between the deputy and Sara Bray, Mr. Walker and Mr. Tonies got into the car with the two women and left. Before leaving, Mr. Walker locked the doors to the SUV and took the keys with him.

After the others left, Deputy Edwards looked through the windows of the SUV and observed a drum set, a glass smoking device, a small glass jar with what appeared to be a legal amount of marijuana, another glass container with contents that could not be discerned, a Mentos container, a portion of a plastic bag sticking out from the center console, and a plastic bag lying underneath a backpack on the passenger's side floorboard. Returning to his car, the deputy determined that the SUV was registered to Natasha L. Allison of Oroville, Washington. Deputy Edwards arranged for dispatch to put him in touch with the Walla Walla Police Department's K-9 officer, Gunner Fulmer,

3

and the deputy explained to Officer Fulmer his suspicions about the two men and the SUV.

While Deputy Edwards was speaking with Officer Fulmer, Mr. Tonies returned to the parking lot. He told Deputy Edwards that he had a backpack in the SUV he wanted to retrieve, but he didn't have keys to the car. Deputy Edwards suggested Mr. Tonies contact Mr. Walker, who appeared to have had the keys earlier, but Mr. Tonies claimed not to have Mr. Walker's phone number. Deputy Edwards then told Mr. Tonies he was going to seize the SUV. Mr. Tonies left the lot without his backpack.

The SUV was towed to the Walla Walla Police Department so that Officer Fulmer could deploy his K-9 partner, Rev, to check for the presence of drugs. He did not deploy Rev until 3:00 p.m. in the afternoon.[2] When Officer Fulmer deployed Rev on the SUV, Rev alerted to the odor of drugs at the seam of the front passenger door. Based on the alert, Officer Fulmer applied for and obtained a warrant to search the SUV. During the search, Rev alerted to Mr. Tonies' backpack and Officer Fulmer applied for and obtained

---

[2] In the meantime, Officer Fulmer contacted and spoke with Nicole Olivera, who his own report identifies as the owner of the SUV. (The discrepancy in the officers' identification of the owner is unexplained.) The conversation apparently did nothing to advance the State's case. Ms. Olivera told the officer that she loaned her SUV to "Moses" (known to Officer Fulmer to be a name used by Mr. Walker) at about 10:00 p.m. the prior evening with the understanding that Mr. Walker and Mr. Tonies were going to Prescott to get a drum set. Clerk's Papers (CP) at 29. She told the officer that Mr. Walker had returned her keys and notified her of the impound, and that she had contacted the Walla Walla Police Department that morning about recovering her car.

4

a second warrant to search the backpack. Based on methamphetamine, a smoking pipe, a digital scale, and legend drugs found inside the backpack, Mr. Tonies was charged with three violations of the Uniform Controlled Substances Act, ch. 69.50 RCW.

Mr. Tonies' lawyer moved to suppress evidence of the drugs on several grounds, including that the seizure of the SUV was unlawful because Deputy Edwards did not have probable cause to believe it was used to commit a felony. The trial court denied the motion. The parties stipulated and the court found that its denial of the suppression motion involved controlling questions of law as to which there was substantial ground for a difference of opinion. Mr. Tonies petitioned this court for discretionary review, which was granted.

## ANALYSIS

Evidence obtained directly or indirectly through a violation of a defendant's constitutional rights is subject to suppression. *Mapp v. Ohio*, 367 U.S. 643, 654-55, 81 S. Ct. 1684, 6 L. Ed. 2d (1961). The exclusionary rule applies not only to items initially obtained through illegal conduct, but also to evidence derived from an illegal search, under the fruit of the poisonous tree doctrine. *State v. O'Bremski*, 70 Wn.2d 425, 428, 423 P.2d 530 (1967) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

Mr. Tonies moved the trial court to suppress the drugs and drug paraphernalia found in his backpack because they were obtained as an indirect result of the early

5

morning seizure of the SUV from the Prescott pool parking lot. At issue is whether Deputy Edwards had a lawful basis for seizing the SUV at the time he arranged for it to be towed to the Walla Walla Police Department.

"A seizure of property occurs when 'there is some meaningful interference with an individual's possessory interest in that property,'" including "when a law enforcement officer exercises 'dominion and control' over it." *State v. Cotten*, 75 Wn. App. 669, 680-81, 879 P.2d 971 (1994) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 120, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984)). Even if an item is not searched before acquisition of a warrant, its seizure implicates a constitutional interest and for this reason, seizures of property must be based on probable cause. *United States v. Place*, 462 U.S. 696, 716, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983) (Brennan, J., concurring).

We review the denial of a suppression motion to determine whether substantial evidence supports the challenged findings of fact and whether these findings support the trial court's conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999), *overruled on other grounds by Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). In this case, the trial court found all material facts to be undisputed in denying the suppression motion. Mr. Tonies does not challenge that characterization on appeal. The trial court's assessment of probable cause is a legal question that we review de novo. *State v. Chamberlin*, 161 Wn.2d 30, 40-41, 162 P.3d 389 (2007).

6

The legislature has provided by statute for circumstances under which law enforcement officers may impound motor vehicles. By statute, a vehicle is not subject to impoundment by law enforcement for having been left unattended in a publicly owned or controlled parking lot for less than 24 hours unless the parking lot has been posted in accordance with RCW 46.55.070. RCW 46.55.010(14), .080(1). The statutory posting requirement includes conspicuous signage near each entrance that clearly indicates the times that a vehicle may be impounded as an unauthorized vehicle. RCW 46.55.070(1)(a). There is no evidence that the Prescott pool parking lot was posted in this manner.

RCW 46.55.113 authorizes impoundment of vehicles by police officers in a number of other circumstances, including in connection with certain arrests, where the vehicle is obstructing traffic or jeopardizing public safety, when the vehicle is determined to be stolen, and in some cases of illegal parking, such as being parked illegally in a space for the handicapped or a commercial loading zone. None of the situations in which impoundment is authorized by RCW 46.55.113 was present in the case of the borrowed SUV.

Statutory bases for impoundment are not exclusive, however; "[n]othing in [RCW 46.55.113] may derogate from the powers of police officers under the common law." RCW 46.55.113(4). The common law bases on which a police officer may impound a car include where he or she is carrying out a "community caretaking" function or where

7

the "officer has probable cause to believe the vehicle was either stolen or used in the commission of a felony." *State v. Williams*, 102 Wn.2d 733, 742-43, 689 P.2d 1065 (1984) (quoting *State v. Simpson*, 95 Wn.2d 170, 189, 622 P.2d 1199 (1980)). The State has abandoned any effort to characterize Deputy Edwards' actions as a community caretaking impoundment.

"[W]hen an officer has probable cause to believe that a car contains contraband or evidence of crime, he or she may seize and hold the car for the time reasonably needed to obtain a search warrant and conduct the subsequent search. It makes no constitutional difference whether this is done by placing a guard on the car at the scene or by towing it to the police station." *State v. Huff*, 64 Wn. App. 641, 653, 826 P.2d 698 (1992) (citing, e.g., *State v. Terranova*, 105 Wn.2d 632, 716 P.2d 295 (1986); *Chambers v. Maroney*, 399 U.S. 42, 51-52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)). Earlier cases had recognized impoundment as a reasonable alternative to a search based on the so-called "automobile exception" to the warrant requirement.[3] *State v. Houser*, 95 Wn.2d 143, 149-50, 622 P.2d 1218 (1980) (although probable cause was found lacking in the case); *State v. Gasper*, 84 Wn.2d 17, 21-22, 523 P.2d 937 (1974) (finding that because seizure

---

[3] The "so-called 'automobile exception' recognized under the Fourth Amendment but not article I, section 7 . . . allows a warrantless search of an automobile and all containers therein based upon probable cause." *State v. Patton*, 167 Wn.2d 379, 386 n.4, 219 P.3d 651 (2009) (citing *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)).

of contraband seen in a car would have been lawful under the Fourth Amendment under the rule established by *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), so was the "more cautious route of impounding the vehicle"). Our Supreme Court thereafter clarified that the automobile exception recognized under the federal constitution is not an exception to the warrant requirement under article I, section 7 of the Washington Constitution. *State v. Ringer*, 100 Wn.2d 686, 700, 674 P.2d 1240 (1983), *overruled in part on other grounds by State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986), *overruled in part on other grounds by State v. Valdez*, 167 Wn.2d 761, 224 P.3d 751, (2009). As a result, where an officer has probable cause to believe that a vehicle contains contraband, seizing and holding the car while applying for a search warrant is the only alternative unless obtaining a warrant is impracticable (or unless an exception to the warrant requirement other than exigent circumstances applies). *State v. Tibbles*, 169 Wn.2d 364, 370, 236 P.3d 885 (2010).

In deciding the suppression motion, the trial court analyzed whether Deputy Edwards had probable cause to impound the SUV based on matters known to him at the time of the early morning seizure. It explained that its conclusion that probable cause existed even without considering Rev's subsequent alert was

> based on [Deputy Edwards'] observations of the SUV parked unattended at a closed park/pool, the time of day, the explanations of Mr. [Walker] and Mr. Tonies about why they were at the scene there in Prescott at 1:30 a.m., his personal knowledge of Mr. [Walker's] criminal history to include drug

9

offenses, and his observations of their nervousness during their contact with him.

Clerk's Papers (CP) at 60.

Probable cause exists if facts and circumstances support a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Probable cause requires "more than mere suspicion or personal belief that evidence of a crime will be found on the premises searched." *Id.* at 183.

The Washington Supreme Court's decision in *Neth* compels the conclusion that Deputy Edwards lacked probable cause to seize the SUV. In *Neth*, a state patrol trooper stopped a car for speeding and encountered a driver and passenger who were unable to produce any identification. In later applying for a search warrant, the trooper described the driver as "overly nervous" and as "driving a car that he could not prove he own[ed]"; the trooper reported that the driver made self-contradictory comments, "possessed clear plastic bags that drug traffickers are known to use for carrying illegal drugs," and admitted to having somewhere between $2,500 and $3,500 in cash. *Id.* The trooper had also determined that the driver was a "convicted felon for delivery charges including possession of Heroin." *Id.* at 184. The Supreme Court characterized these facts as "unusual, and, taken together, they seem odd and perhaps suspicious." *Id.* But it observed that "all of these facts are consistent with legal activity, and very few have any

10

reasonable connection to criminal activity." *Id.* The only facts that tended to establish a nexus to criminal activity were the plastic baggies, a relatively large sum of money, and the driver's criminal history. *Id.* The court determined that

> absent some other evidence of illicit activity, the mere possession of a few empty, unused plastic baggies in a coat pocket does not constitute probable cause to search an automobile, even when combined with nervousness, inconsistent statements, and a large sum of money in the car. Baggies are capable of use for lawful as well as unlawful purposes. *Commonwealth v. Rivera*, 27 Mass. App. Ct. 41, 43 n.3, 534 N.E.2d 24 (1989). Innocuous objects that are equally consistent with lawful and unlawful conduct do not constitute probable cause to search. *Cf. State v. Hughes*, 20 Or. App. 493, 502-03, 532 P.2d 818 (1975) (beakers, jars, scales, and rubber gloves are not probable cause justifying issuance of search warrant).

165 Wn.2d at 185. The court went on to reason that while the large sum of cash and the inconsistent explanations reasonably raised suspicion, the suspicion was insufficient to rise to the level of probable cause that a crime was being committed. The court also observed that "[a] history of the same or similar crimes may be helpful in determining probable cause, but without other evidence, it also falls short of probable cause to search." *Id.* at 185-86.

While the facts of this case are similar in many respects to the facts of *Neth*, those identified by the trial court as collectively establishing probable cause to seize the borrowed SUV include even fewer facts tending to establish a nexus with criminal activity. In this case, like in *Neth*, the officer based a probable cause determination on nervous behavior, observations of plastic baggies, and an individual's previous criminal

11

history. There was no evidence that Mr. Walker or Mr. Tonies had possession of thousands of dollars in cash. Deputy Edwards' suspicion was heightened instead by a legal amount of marijuana and the presence of a Mentos container. Although he testified that in his training and experience, Mentos containers are sometimes used to hold drugs, he admitted when cross-examined that he knew from his training and experience that sometimes they contain Mentos.

While the trial court relied on what it apparently viewed as implausible explanations by Mr. Walker and Mr. Tonies as to "why they were at the scene there in Prescott at 1:30 a.m.," it did not make a finding that they provided inconsistent explanations. CP at 60. Deputy Edwards admitted at the suppression hearing that he must have asked follow-up questions about "Donovan" that are not included in his report, and that it was possible that Mr. Tonies was buying the drum set from Donovan.

Given the innocuous character of most of the facts giving rise to Deputy Edwards' suspicion and the slim evidence establishing a nexus to criminal activity, he did not have probable cause to believe that the SUV contained contraband at the time he seized it and arranged for it to be towed to the Walla Walla police station. The trial court's findings do not support its conclusion of law.

We reverse the trial court's denial of the motion to suppress and remand with directions to suppress the seized evidence.

12

No. 32706-0-III
*State v. Tonies*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, C.J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.

13