# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48232-1-II |
| Respondent, | |
| v. | |
| RIGOBERTO PUGA DE LA ROSA, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. – Rigoberto Puga De La Rosa appeals his unlawful possession of a firearm in the second degree conviction. He contends the trial court erred in denying his motion to suppress the firearm seized pursuant to a search warrant because the search warrant lacked probable cause. We affirm Puga De La Rosa's conviction.[1]

## FACTS

On August 3, 2015, Aberdeen police officers responded to a report of shots being fired near Michigan Street. Citizens in the area reported seeing two groups of men. One group was inside "a grey/silver colored 4-door sedan" parked on Second Street. Clerk's Papers (CP) at 90. The other group was standing on Michigan Street. Witnesses observed occupants of the vehicle peeking around the corner at the group of men on Michigan Street. Witnesses observed the vehicle speed off suddenly and then they heard shots fired.

---

[1] Puga De La Rosa also requests that we waive the imposition of appellate costs. Because the State has indicated that it will not be seeking costs, we need not address Puga De La Rosa's waiver request.

The next day, police responded to a report that someone smashed the windshield of a "silver or dark gray" four door Honda. CP at 30. The vehicle belonged to Puga De La Rosa's girlfriend. Officers encountered Puga De La Rosa when they responded to the report. His girlfriend told officers that Matthew Perron smashed her windshield.

Perron's girlfriend, Ashley Young, later told officers at the Aberdeen Police Department that she wanted to "set the record straight." CP at 32. Young told police that Perron did not break the Honda's windshield. Young then described to police the events of August 3, 2015, stating that Puga De La Rosa shot at her and Perron. Young stated that Puga De La Rosa was driving a dark gray Honda at the time of the shooting and provided a diagram consistent with the neighbors' reports of where shots were fired. Young also reported that Puga De La Rosa had "pulled a gun on them previously." CP at 33.

Aberdeen Police Detective Jon Hudson then obtained a search warrant for a silver or gray four door Honda and Puga De La Rosa's residence. The items to be searched for and seized included "all firearms." CP at 22. The affidavit in support of the warrant stated that Young reported that Puga De La Rosa had shot at her and Perron on August 3, 2015 and had displayed a gun to them before.

During the search of Puga De La Rosa's home, the police found a 9 mm pistol. Since Puga De La Rosa had a felony conviction, and he could not legally possess firearms, the State charged him with unlawful possession of a firearm in the second degree.[2]

Puga De La Rosa moved to suppress the gun seized from his home. The trial court denied his motion. The trial court concluded that a nexus existed between Puga De La Rosa's home and

---

[2] The State also charged Puga De La Rosa with possession of a controlled substance–methamphetamine, but this charge was dismissed and is not the subject of this appeal.

2

the firearm seized, stating "when the object of the search is a weapon used to commit a crime, it is reasonable to infer that the weapon is located at the perpetrator's residence." Report of Proceedings (Oct. 21, 2015) at 8. The trial court also concluded Young's statements were reliable under the *Aguilar-Spinelli* [3]test.[4]

Following a stipulated facts bench trial, the trial court found Puga De La Rosa guilty of unlawful possession of a firearm in the second degree. Puga De La Rosa appeals.

ANALYSIS

Puga De La Rosa's sole contention is that the search warrant affidavit does not set forth sufficient facts to support a reasonable nexus between the place to be searched and the items to be seized. We disagree.

I.      STANDARD OF REVIEW

We generally review a magistrate's issuance of a search warrant under an abuse of discretion standard. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). The application for a search warrant must be judged in the light of common sense, resolving all doubts in favor of the warrant. *United States v. Ventresca*, 380 U.S. 102, 108, 88 S. Ct. 741, 13 L. Ed. 2d 684 (1965). We give great deference to the magistrate's decision. *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994).

At a suppression hearing, the trial court acts in an "appellate-like capacity." *Neth*, 165 Wn.2d at 182. Because the trial court performs the same appellate function that we do, we do not

---

[3] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), abrogated by *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983), but adhered to by *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984).

[4] Puga De La Rosa does not challenge this conclusion on appeal.

give the trial court the same deference we give to the issuing magistrate. *Neth*, 165 Wn.2d at 182. Rather, the trial court's assessment of probable cause to support a warrant is a legal conclusion that we review de novo. *Neth*, 165 Wn.2d at 182.

II.    PROBABLE CAUSE

A court may issue a search warrant only upon a determination of probable cause.  U.S. CONST. amend. IV; WASH. CONST. art. 1, § 7; *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).  Probable cause requires a nexus between the criminal activity and the item police want to seize.  *State v. Johnson*, 104 Wn. App. 489, 498, 17 P.3d 3 (2001).  Probable cause also requires a nexus between the item sought and the place police want to search.  *Johnson*, 104 Wn. App. at 498.  Accordingly, an affidavit supporting a search warrant must contain facts from which the court can infer that the item is probably evidence of a crime and that the police will probably find that item in the place they seek to search. *Johnson,* 104 Wn. App. at 498.

According to the affidavit for a search warrant, Young, an eye witness, approached police and told them that Puga De La Rosa shot at her and her boyfriend on August 3, 2015.  Young stated that Puga De La Rosa was driving a dark gray Honda at the time of the shooting and provided a diagram consistent with the neighbors' reports of where shots were fired.  Young also reported that Puga De La Rosa had "pulled a gun on them previously." CP at 33.  There is no showing that Puga De La Rosa knew Young identified him before the warrant was issued.  During the search of Puga De La Rosa's home, the police found a 9 mm pistol.

Weapons, like other personal items, may be inferred to be found at a suspect's home. *State v. Condon*, 72 Wn. App. 638, 644, 865 P.2d 521 (1993).  In *Condon*, the court held, "[B]ecasue it is reasonable to infer that the weapon used to commit a crime may be found at the perpetrator's

4

residence, the fact that the affidavit did not specify why items should be found in Condon's residence, as opposed to anywhere else, does not render it insufficient." 72 Wn. App. at 644.

Puga De La Rosa argues the trial court should not have relied on *Condon*, but rather should have relied on *Thein*, where our Supreme Court held that generalized statements regarding drug activity in the affidavits were insufficient to establish probable cause to search Thein's home. *Thein*, 138 Wn.2d at 148. The *Thein* court, however, recognized that it may be reasonable to infer that personal items of continuing utility may be at the suspect's residence. *Thein*, 138 Wn.2d at 149 n.4. The court stated, "Where the object of the search is a weapon used in the [commission of a] crime or clothing worn at the time of the crime, the inference that the items are at the offender's residence is especially compelling, at least in those cases where the perpetrator is unaware that the victim has been able to identify him to police.'" *Thein*, 138 Wn.2d at 149 n.4 (quoting Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 381-85 (3d ed. 1996)). The *Thein* court then cited to *Condon*. *Thein*, 138 Wn.2d at 149 n.4.

In *Thein,* the officers provided only general statements regarding the common habits of drug dealers to establish probable cause. 138 Wn.2d at 148. Here, there was an eye witness who observed Puga De La Rosa with a firearm on two occasions and there is no indication in our record that Puga De La Rosa knew Young identified him to police.

Based on both *Condon* and *Thein*, it was reasonable to infer that a firearm would be at Puga De La Rosa's residence. Because probable cause existed in the supporting search warrant affidavit, the issuing judge did not abuse his discretion and the trial court did not err in denying Puga De La Rosa's motion to suppress the firearm seized from his home.

48232-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Sutton, J.