IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32029-4-III |
| | ) | (consolidated with |
| Appellant, | ) | No. 32030-8-III) |
| | ) | |
| v. | ) | |
| | ) | |
| CASEY J. LYNN DUNN, | ) | |
| | ) | |
| Respondent. | ) | PUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN RAY LONG, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Witnesses saw Steven Long driving a pickup truck on Hogeye Hollow Road in Columbia County. In the bed of the truck was an ATV[1] with camouflage packs. The next day, after the same truck was found abandoned, a property owner reported that truck, an ATV with camouflage packs, and several other large items of personal property missing. Based on these facts, a judge issued a warrant to search for

---

[1] An ATV is a commonly used acronym for all terrain vehicle.

the missing items at Mr. Long's home and adjacent buildings located on Hogeye Hollow Road. The search uncovered stolen property and controlled substances. Mr. Long and his roommate Casey Dunn were charged with various offenses. Both defendants moved to suppress the evidence gathered in the search. The trial court granted the motions, concluding that the affidavit in support of the warrant failed to establish a reasonable nexus between the missing items and Mr. Long's residence. The State moved for findings that the cases could not proceed based upon the suppression orders, and the court entered such findings. The State appealed, and we consolidated both cases. We conclude that there was a reasonable nexus between the missing items and Mr. Long's residence to support the warrant. We therefore vacate the suppression orders and the orders of dismissal.

## FACTS

Undersheriff Lee Brown investigated the circumstances surrounding an abandoned vehicle found on Ring Canyon Road in Columbia County. After his investigation, he set forth the following facts in his application for a search warrant.

On May 3, 2013, Undersheriff Brown was dispatched to investigate an abandoned vehicle in a ditch on Steve Shoun's property on Ring Canyon Road. While en route to the field, he called Mr. Shoun. Mr. Shoun said that he observed the same pickup truck on

2

Hogeye Hollow Road the day prior when it almost ran his hired hand off the road. Mr. Shoun said that he saw Steven Long driving the pickup truck and that Mr. Long waved to him. Mr. Shoun also said that there was an ATV with camouflage packs in the bed of the pickup truck.

When Undersheriff Brown arrived at the scene, he observed a Dodge Ram pickup truck with a gray bed and a brown cab. The pickup truck was in the ditch with the rear of the truck sticking out. The ATV seen the previous day was no longer in the truck. Undersheriff Brown then called Mr. Shoun and asked him to come and verify that the pickup truck was the same one that he observed Mr. Long driving the previous day. Mr. Shoun and his hired hand arrived at the scene and verified that they both observed Mr. Long driving the same pickup truck. Mr. Long was employed by Mr. Shoun in 2010, and the hired hand had known Mr. Long for six or seven years. The truck was registered to Zackary Zink of Dayton. The vehicle was towed and placed in a storage yard.

At around 1:00 p.m., Undersheriff Brown met and spoke with Mr. Zink in the foyer of the sheriff's office. Mr. Zink said that the Dodge pickup truck in the storage yard belonged to him and had been at his property located at 628 Robinette Mountain Road. According to Mr. Zink, he last saw the pickup truck on Tuesday, April 30, 2013.

3

Mr. Zink told Undersheriff Brown that he was going to his property to see if his cabin had been entered.

Around 3:30 p.m., Undersheriff Brown responded to a burglary at Mr. Zink's cabin on Robinette Mountain Road. When Undersheriff Brown arrived, Mr. Zink said that the back door was kicked in and the outbuildings had been entered. Mr. Zink also reported a shoe print on the door. Undersheriff Brown observed that the door was kicked in. He also dusted for latent prints, but found none.

Mr. Zink reported that property was missing from the cabin, including both his ATVs, his generators, and a rifle. Undersheriff Brown was advised that one of the ATVs had tannish colored camouflage packs on the back of it, which matched the description of the ATV seen by Mr. Shoun in the back of the pickup truck. Mr. Zink provided a list of missing property with serial numbers or other identifying characteristics.

In the affidavit, Undersheriff Brown listed the missing property reported by Mr. Zink. The property list included two ATVs, three generators, one rifle, two chainsaws, one box of movies, three pairs of binoculars, a tree planter, an alcoholic drink dispenser, and an air compressor.

Also in the affidavit, Undersheriff Brown listed the premises to be searched as a single family manufactured home, garage, and wooden barn at 447 Hogeye Hollow Road

in Columbia County. He described the buildings as approximately .1 mile from the intersection of Lower Hogeye Road and Hogeye Hollow Road. He described the premises as the residence of Steven Long.

Based on the above facts, a judge granted the search warrant. During a search of Mr. Long's home, officers found several items that Mr. Zink reported missing. Officers also found methamphetamine. Mr. Long was charged with second degree burglary, two counts of second degree theft, two counts of third degree malicious mischief, one count of residential burglary, three counts of second degree possession of a stolen vehicle, three counts of possession of a stolen vehicle, two counts of possession of stolen property, theft of a firearm, possession of methamphetamine, and manufacture of marijuana. Ms. Dunn, who lived at the home with Mr. Long, was charged with possession of methamphetamine, manufacture of marijuana, and second degree possession of stolen property.

Both Mr. Long and Ms. Dunn moved to suppress the evidence found in the search. The defendants argued that the warrant was not supported by probable cause because the affidavit failed to establish a reasonable nexus between the criminal activity and the place to be searched.

The trial court granted the defendants' motions. The court concluded that the search warrant did not set forth sufficient facts to support a reasonable nexus between Mr.

5

Long's residence and the items sought in the search warrant; and, without a reasonable nexus, probable cause did not exist. The court therefore concluded that the warrant was not valid and suppressed all evidence gathered as a result of the warrant. The court entered findings, at the State's request, that the cases could not proceed without the evidence, and dismissed the cases without prejudice. The State appeals, contending that the trial court erred in suppressing the evidence, and requests vacation of the orders of dismissal.

## ANALYSIS

The sole issue presented is whether there was a reasonable nexus between Mr. Long's home, garage, and barn and the items sought to be located so to support the search warrant.

A search warrant may only be issued upon a determination of probable cause. *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995). Probable cause exists as a matter of law if the affidavit supporting the search warrant contains sufficient facts and circumstances to establish a reasonable inference that the defendant participated in criminal activity and that evidence of the crime is at a certain location. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

"'[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Id.* (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). A nexus must be established by specific facts. *Thein*, 138 Wn.2d at 145. "Absent a sufficient basis in fact from which to conclude evidence of illegal activity will likely be found at the place to be searched, a reasonable nexus is not established as a matter of law." *Id.* at 147.

Generally, we review the validity of a search warrant for an abuse of discretion, giving great deference to the issuing judge. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). However, when a trial court assesses a search warrant affidavit for probable cause at a suppression hearing, we review the trial court's conclusion on suppression de novo. *Id.*

Using de novo review, we determine whether the qualifying information as a whole amounts to probable cause. *State v. Emery*, 161 Wn. App. 172, 202, 253 P.3d 413 (2011) (quoting *In re Det. of Petersen*, 145 Wn.2d 789, 800, 42 P.3d 952 (2002)), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). We consider only the information that was available to the issuing judge. *State v. Olson*, 73 Wn. App. 348, 354, 869 P.2d 110 (1994). "'It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing judge] is entitled to make reasonable

7

inferences from the facts and circumstances set out in the affidavit.'" *Emery,* 161 Wn. App. at 202 (alteration in original) (quoting *State v. Maddox,* 152 Wn.2d 499, 505, 98 P.3d 1199 (2004)).

The existence of probable cause is to be evaluated on a case-by-case basis. *Thein,* 138 Wn.2d at 149. Facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts. *State v. Garcia,* 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). The application for a search warrant must be judged in the light of common sense, resolving all doubts in favor of the warrant. *State v. Partin,* 88 Wn.2d 899, 904, 567 P.2d 1136 (1977).

Despite the deference given to the issuing judge, our precedent requires that probable cause be based on more than conclusory predictions. *Thein,* 138 Wn.2d at 147. Blanket inferences and generalities cannot be a substitute for the required showing of "reasonably specific 'underlying circumstances' that establish evidence of illegal activity will likely be found in the place to be searched in any particular case." *Thein,* 138 Wn.2d at 147-48. Probable cause to believe a person has committed a crime does not necessarily give rise to probable cause to search that person's home. *Id.* at 148 (quoting *State v. Dalton,* 73 Wn. App. 132, 140, 868 P.2d 873 (1994)).

Nonetheless, it may be proper to infer that stolen property is at a perpetrator's residence, especially if the property is bulky, and if the perpetrator had an opportunity to return home before his apprehension by police. WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d), at 381-84 (3d ed. 1996) (cited in *State v. McReynolds*, 104 Wn. App. 560, 570, 17 P.3d 608 (2000)). "Judges looking for probable cause in an affidavit may draw reasonable inferences about where evidence is likely to be kept, including nearby land and buildings under the defendant's control." *State v. Gebaroff*, 87 Wn. App. 11, 16, 939 P.2d 706 (1997).

In *Thein*, police officers obtained a search warrant for the defendant's residence based on their generalized conclusion that drug dealers commonly keep evidence of their illegal drug dealings in their homes. *Thein*, 138 Wn.2d at 138-40. The Supreme Court held that generalized statements in affidavits supporting a search warrant are insufficient, standing alone, to establish the probable cause needed to search a suspected drug dealer's residence. *Id.* at 148. "Although common sense and experience inform the inferences reasonably to be drawn from the facts, broad generalizations do not alone establish probable cause." *Id.* at 148-49.

In *McReynolds*, our court addressed the boundaries of *Thein*. We recognized that inferences considered improper for drug crimes may be appropriate for crimes of theft,

9

burglary, or robbery based on the nature of these offenses. *McReynolds*, 104 Wn. App. at 569-70. In support, we quoted LeFave's *Search and Seizure* treatise, also cited in *Thein*, stating,

> Perhaps because stolen property is not inherently incriminating in the same way as narcotics and because it is usually not as readily concealable in other possible hiding places as a small stash of drugs, courts have been more willing to assume that such property will be found at the residence of the thief, burglar, or robber. It is commonly said that in such circumstances account may be taken of the 'type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property.' It is most relevant, therefore, that the objects are 'the sort of materials that one would expect to be hidden at [the offender's] place of residence, both because of their value and bulk,' and also that the offender 'had ample opportunity to make a trip home to hide' the stolen property before his apprehension.

*McReynolds*, 104 Wn. App. at 569-70 (alteration in original) (quoting LEFAVE, *supra*).

Thus, instead of expanding the *Thein* ruling to limit inferences made in nondrug offenses, the *McReynolds* court suggested a more limited reading of *Thein*. *McReynolds*, 104 Wn. App. at 570. We construed *Thein* to require a careful examination of the officer's affidavit, and the specific facts and circumstances therein, to determine whether it establishes a reasonable inference that evidence of criminal activity could be found at the place to be searched. *Id.*

10

Here, the defendants argue that the facts in the affidavit do not establish a reasonable nexus between the items sought and Mr. Long's residence. We disagree. After reviewing the affidavit in its entirety, including Undersheriff Brown's account of the circumstances, the description of the premises to be searched, and the list of items to be seized, we conclude that the affidavit contains specific facts to establish a reasonable nexus between the items to be seized and the place to be searched.

Based on the facts and circumstances presented in the affidavit, it was reasonable to conclude that the missing items would likely be found at Mr. Long's residence on Hogeye Hollow Road. According to the affidavit, Mr. Long was seen in possession of a truck carrying an ATV. The truck belonged to Mr. Zink, and the ATV with camouflage packs matched Mr. Zink's description of one of his two missing ATVs. When witnesses observed Mr. Long with the truck and missing ATV, he was driving on Hogeye Hollow Road. According to the description of the premises to be searched, Hogeye Hollow Road is where Mr. Long's residence is located. Moreover, the items stolen were not inherently incriminating in the same way as narcotics, and many of the items were bulky and, therefore, likely to be hidden inside a building. The judge issuing the warrant was entitled to draw the reasonable inference that Mr. Long was driving to his residence with the missing property, and that the property would likely be found there.

11

We conclude that the trial court erred in suppressing the evidence found in the search of Mr. Long's home, garage, and barn. Specific facts support both that Mr. Long participated in the burglary and that the missing items would likely be found at Mr. Long's home, garage, or barn. The search warrant therefore was supported by probable cause.

We vacate the suppression orders. Additionally, we vacate the orders of dismissal and remand for further proceedings.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.