IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33033-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| BRENT DOUGLAS REEDY, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

PENNELL, J. — Brent Reedy appeals his convictions for possession of a controlled substance and first degree unlawful possession of a firearm. Although sufficient evidence supports his convictions, evidence seized from his home and shop should have been suppressed. Based on this error, Mr. Reedy's convictions are reversed and this matter is remanded to the superior court for further proceedings.

## FACTS

At approximately 4:30 a.m. on an August morning in 2012, Union Gap police officer Ryan Bonsen made contact with a pedestrian named Benjamin Templeman. Mr. Templeman told Officer Bonsen he was waiting for Michael White, who had left to buy some methamphetamine for the two to share. Mr. Templeman was not sure where Mr. White had gone to purchase the drugs. He last saw Mr. White heading southbound on 4th Avenue. Based on this information, Officer Bonsen began a narcotics investigation. Officer Bonsen was familiar with Mr. White's tan and brown Chevrolet pickup truck. He drove around the neighborhood looking for the truck but was unsuccessful.

Mr. Reedy's home is located on 4th Avenue in the area Officer Bonsen was searching. As Officer Bonsen drove by Mr. Reedy's home, he noticed a red Chevrolet Camaro parked on the street and a red Jeep Cherokee nosed into the driveway. Mr. Reedy is the registered owner of the red Camaro. Officer Bonsen did not see any activity at Mr. Reedy's house.

Officer Bonsen returned to the street corner where Mr. Templeman was waiting with another officer. As he talked to Mr. Templeman a second time, he heard a vehicle start up within the distance of a city block. The Camaro and the Jeep previously observed at Mr. Reedy's residence then approached. Officer Bonsen noticed the Camaro had an

2

aftermarket performance exhaust installed.

When the Camaro pulled up to the stop sign, Officer Bonsen contacted the car. He identified Mr. Reedy as the driver, Mr. White as the front passenger, and a third person in the back seat. The Jeep stopped behind the Camaro.

Based on Mr. Templeman's report, along with suspicious furtive movements made by Mr. Reedy and Mr. White, Officer Bonsen obtained a warrant to search the Camaro. Prior to executing the warrant, Officer Bonsen asked Mr. Reedy if he had any money on his person. Mr. Reedy responded that he had about $300. Upon counting the money, Mr. Reedy was found to actually have $790. Mr. Reedy denied there were any drugs or indicia of drugs in his vehicle. Officer Bonsen advised Mr. Reedy he would return his money if this claim proved to be true. Mr. Reedy agreed.

During a search of Mr. Reedy's Camaro, Officer Bonsen located Mr. Reedy's wallet on the driver's seat. He found an additional $4,425 in cash. The bills appeared to be in denominations for making quick change. In addition, while looking under the car's front passenger seat, Officer Bonsen found a large, golf-ball-sized chunk of methamphetamine wrapped in black plastic. The front passenger seat of the car was where Mr. White had been seated, and the methamphetamine was located in an area where Officer Bonsen had viewed both Mr. White and Mr. Reedy making furtive

movements.

After searching the Camaro, Officer Bonsen submitted a telephonic affidavit for a search warrant for Mr. Reedy's home, including a shop located behind the residence. A judge granted the search warrant to search for "[n]arcotics to include Methamphetamine, as well as paraphernalia for ingestion, manufacture and packaging, currency and Documents of Dominion and Control." Clerk's Papers (CP) at 26-27.

While executing the search warrant, Officer Bonsen found seven firearms in a safe inside Mr. Reedy's shop. He also found black plastic packaging material consistent with the material found wrapped around the methamphetamine in Mr. Reedy's car.

The State charged Mr. Reedy with one count of possession of a controlled substance, methamphetamine, with intent to deliver, and seven counts of first degree unlawful possession of a firearm. After the trial court denied motions to suppress evidence seized from the Camaro and the residence, Mr. Reedy's case proceeded to trial. A jury convicted Mr. Reedy on all of the firearm counts and of the lesser-included offense of possession of methamphetamine. Mr. Reedy appeals.

## ANALYSIS

*The Vehicle Stop*

Mr. Reedy argues Officer Bonsen's stop of his vehicle for a purported exhaust

4

pipe infraction was a pretext for an impermissible criminal investigation. According to

Mr. Reedy, Officer Bonsen was aware of his "'methamphetamine history'" and therefore

improperly stopped his vehicle based only on a hunch Mr. Reedy might be involved in the

drug acquisition of Mr. Templeman and Mr. White. Appellant's Opening Br. at 12

(quoting CP at 22).

Police cannot utilize a traffic stop as pretext for an unrelated criminal

investigation. *State v. Ladson*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999). The

constitutional right to privacy means, among other things, that law enforcement cannot

rely on a minor traffic violation in order to pursue a hunch that an individual might be

involved in criminal activity. *Id.* at 348-49, 362. Under the Washington State

constitution,[1] the legality of a stop turns on the actual motives of law enforcement rather

than an officer's ability to find a violation of the state's extensive traffic code. *Id.* at 353.

Reviewing whether a traffic stop was improperly pretextual involves assessing the

totality of the circumstances, including both the officer's subjective intent as well as the

objective reasonableness of the officer's behavior. *Id.* at 358-59.

Mr. Reedy's pretext argument fails because there is no evidence Officer Bonsen's

---

[1] Pretextual stops are permissible under the United States Constitution. *See Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

stop was based on anything other than reasonable suspicion of a legitimate traffic infraction. During the suppression hearing, Mr. Reedy opted not to present any testimony. Instead, he relied solely on information contained in the warrant affidavit used to search his Camaro.[2] The affidavit indicated Officer Bonsen stopped the Camaro because of an improper exhaust system. This is a traffic infraction. RCW 46.37.390(3). It is a sufficient basis for a stop. *State v. Chacon Arreola*, 176 Wn.2d 284, 298, 290 P.3d 983 (2012). There was no evidence Officer Bonsen suspected him of being associated with Mr. Templeman. There was also no evidence that a reasonable officer in Officer Bonsen's position would not have conducted a traffic stop based upon the vehicle exhaust violation. Because there was no evidence of pretext or even a mixed motive, the trial court's decision to deny Mr. Reedy's suppression motion was proper.

*The Residential Search Warrant*

While the lack of any suspicion tied to Mr. Reedy undercuts his pretext argument, it bolsters his challenge to the warrant for his home. Mr. Reedy argues that, given the limited information available, there was no probable cause to find a nexus between his

---

[2] The State asked to be allowed to call Officer Bonsen as a witness at the suppression hearing, but defense counsel stated he was resting the motion on the affidavit and did not want any testimony admitted regarding the stop. The court ruled that because this was a defense motion, it was the defendant's decision to rely only on the document and not on any testimony.

residence and the drug evidence located in his car. We agree.

When reviewing a suppression decision based upon an invalid warrant, we stand on equal footing with the trial court. *State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791 (2015). Although the initial warrant decision is entitled deference, both our review and the review of the trial court for probable cause "is limited to the four corners of the affidavit . . . ." *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). To meet the required standard, the affidavit must contain "facts and circumstances from which a reasonable person could infer that criminal activity is probably occurring, and that evidence of such activity will probably be found at the place to be searched when the search occurs." *State v. McGovern*, 111 Wn. App. 495, 499, 45 P.3d 624 (2002).

Probable cause to believe an individual has committed a drug offense does not automatically provide probable cause to search the individual's home. *State v. Thein*, 138 Wn.2d 133, 148, 977 P.2d 582 (1999). This is true even if the individual is believed to be a drug dealer, as opposed to merely a purchaser or intermediary. Probable cause cannot be based upon generalities. *Id.* at 146-49. Instead, to justify the search of an individual's home, a warrant affidavit must allege specific facts from which it can be reasonably inferred that the suspect under investigation probably keeps drug-related evidence at his home. *McGovern*, 111 Wn. App. at 499-500. An inference of drug-related nexus is not

7

reasonable when police have conducted only a cursory investigation and fail to address equally plausible locations for a suspect's drug activities. *Thein*, 138 Wn.2d at 150-51.

At best, the large amount of cash found on Mr. Reedy and in his wallet, coupled with the drugs found near where Mr. White had been seated, provided circumstantial evidence Mr. Reedy was involved in drug trafficking.[3] But there was no information detailing where the trafficking activity took place. The affidavit alleged Mr. Reedy had a vague history of prior drug arrests, but there was no information regarding whether that history involved use of his home as opposed to a vehicle or a separate stash house. In addition, while the affidavit indicated Mr. Reedy and his companions had recently driven to Officer Bonsen's location from Mr. Reedy's house, there was no information suggesting anything had been taken from the house and placed in the car.

Under the limited facts set forth in the warrant affidavit, Mr. Reedy's residence was only one of many equally plausible locations for the transaction that ultimately resulted in methamphetamine being hidden in the Camaro. For example:

---

[3] The evidence as to trafficking was not overwhelming, as evidenced by the jury's verdict, convicting Mr. Reedy of simple possession of methamphetamine as opposed to possession with intent to distribute.

- At the time of the search, it appeared Mr. White had driven his car to purchase drugs,[4] yet Mr. White's car could not be found in the area. It was entirely plausible Mr. White purchased the drugs at an unknown location either with or without Mr. Reedy and then walked back to Mr. Reedy's home.

- There was a Jeep parked at Mr. Reedy's home that followed the Camaro to Officer Bonsen's location. The Jeep's driver blinded Officer Bonsen with her headlights at approximately the same time Mr. Reedy and Mr. White engaged in furtive movements inside the Camaro. This suggested some sort of complicity on the driver's part. The circumstances made it plausible the driver of the Jeep facilitated the methamphetamine transaction from inside her vehicle.

- Even assuming only Mr. Reedy and Mr. White were involved in the methamphetamine transaction, the facts presented in the affidavit left open the plausible explanation that Mr. Reedy dealt drugs from his car instead of his house.

---

[4] Mr. Templeman told Officer Bonsen that Mr. White had dropped him off on the corner prior to leaving to buy drugs. This suggests Mr. White had been driving.

9

These queries are all admittedly speculative. That is the point. It was also speculative to posit that the methamphetamine transaction occurred inside Mr. Reedy's house. A dealer's drugs must come from somewhere. His or her house is always a likely source. For this reason, federal courts typically allow residential search warrants for suspected drug dealers under the United States Constitution. *See, e.g., United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993). But our state constitution and case law require more than speculation. There must instead be a true individual nexus. The facts set forth in the affidavit provided no more reason to conclude the methamphetamine in Mr. Reedy's car came from his home than is generally true for any other individual arrested in a drug transaction. More investigation would have been necessary to justify an invasion into Mr. Reedy's home.[5]

The State places significant emphasis on the reliability of the informant, Mr. Templeman. We agree that the judge issuing the warrant was entitled to find Mr. Templeman credible. Yet, this is not helpful to the State because Mr. Templeman did not implicate either Mr. Reedy or his residence. Mr. Templeman did not know where Mr.

---

[5] For example, in *State v. G.M.V.*, 135 Wn. App. 366, 144 P.3d 358 (2006), law enforcement officers conducted sufficient investigation to overcome an argument under *Thein* because they twice observed the defendant returning to a residence immediately after a controlled drug buy. The defendant was also observed leaving the same residence just prior to the first buy.

10

White had gone to purchase drugs. He did not know whether the supplier might have been Mr. Reedy or one of the other individuals present. Mr. Templeman's information provided Officer Bonsen sufficient grounds to expand the scope of the stop of Mr. Reedy's vehicle. However, it did not provide any reason for believing Mr. Reedy kept evidence regarding drug trafficking activities in his home.

Because the warrant affidavit did not provide probable cause to search Mr. Reedy's residence, the defense motion to suppress should have been granted. Fruits of the residential search, including the firearms at issue in counts two through eight of the information and the packaging material used to tie the drugs at issue in count one to Mr. Reedy's residence, should have been suppressed.

*The Sufficiency Challenge*

Based on our suppression ruling, all Mr. Reedy's counts of conviction must be reversed. Whether reversal is without prejudice to retry turns on whether the State presented sufficient evidence of guilt. We hold that it did.

Evidence is sufficient if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). Courts must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence

11

most strongly against the defendant. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence receives the same weight as direct evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). Appellate courts defer to the fact finder on the resolution of conflicting testimony, credibility determinations, and the persuasiveness of the evidence. *Id.* at 874-75.

Mr. Reedy argues the State failed to produce sufficient evidence he possessed the methamphetamine located in his car. We disagree. The State's theory was that Mr. Reedy was in constructive possession of the methamphetamine found under the passenger seat of his car. There was more than sufficient evidence presented to justify this conclusion. Mr. Reedy was the owner and driver of the Camaro. He possessed large amounts of cash in denominations indicative of low- to mid-level drug sales. He also had a hidden compartment in his Camaro consistent with a vehicle that had been modified to transport concealed contraband. When Officer Bonsen first stopped the Camaro, he observed Mr. Reedy and Mr. White making furtive movements towards the right hand side of the Camaro, where the methamphetamine was found. This combination of facts provided sufficient evidence from which the jury could infer Mr. Reedy knew of the methamphetamine and had the power and intention to control it. Taking the evidence in the light most favorable to the State, there was sufficient evidence of guilt.

12

No. 33033-8-III
*State v. Reedy*

CONCLUSION

Probable cause did not support the warrant to search Mr. Reedy's residence. Because evidence from that search was critical to all counts of conviction, Mr. Reedy's convictions are reversed in their entirety without prejudice. This matter is remanded to the trial court for proceedings consistent with this ruling.[6]

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Fearing, C.J.                                             Lawrence-Berrey, J.

---

[6] Retrial of all counts, including those involving firearms, is not prohibited under the double jeopardy clause of the Fifth Amendment of the United States Constitution. *Lockhart v. Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Whether retrial of the firearms charges is feasible is a separate matter, about which this court has no comment.

13