# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49593-7-II |
| Respondent, | |
| v. | |
| MICHAEL WALTER WOOD, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Following a bench trial, the trial court entered verdicts finding Michael Walter Wood guilty of four counts of unlawful possession of a controlled substance with intent to deliver and one count of first degree unlawful possession of a firearm.  Wood appeals from his convictions, asserting that the trial court erred by denying his CrR 3.6 motion to suppress evidence seized from his home.[1]  Specifically, Wood contends that the affidavit in support of the search warrant failed to present facts sufficient to establish probable cause that evidence of criminal activity would be found in his home.  We affirm.

## FACTS

Pierce County Sheriff's Deputy Kory Shaffer submitted an affidavit for a search warrant that sought to search Wood's person, vehicles, and residence, which provided in relevant part:

> In the winter of 2015 a reliable confidential informant, C/I, agreed to work with the Pierce County Sheriff's Department.
> . . . .

---

[1] Wood raises this same claim in his Statement of Additional Grounds for Review (SAG).  RAP 10.10.

During the initial debriefing of the C/I, the C/I provided information about a source of narcotics. The source was a white male by the name of "Mike" who sold narcotics throughout the Pierce County area. The C/I also provided information that "Mike" drives a red Kia SUV.

Through the initial stages of the investigation I was able to identify "Mike" as Michael W. Wood 09-03-59. The C/I confirmed "Mike's" identity through a photograph.

Within the past seventy two hours the C/I, while under constant surveillance of the Pierce County Sheriff's Department Special Investigations Unit, has made a controlled buy of methamphetamine from Michael W. Wood. . . . The C/I told me Michael agreed to meet in a public parking lot.
. . . .

Detective Rayner, who is familiar with the investigation, observed a red Kia Rondo . . . pull into the parking lot and park near the C/I. He told me he observed Michael get out and contact the C/I. Within a few minutes Michael got back in his Kia and left the parking lot.

Surveillance units followed the Kia as it left the parking lot.
. . . .

After leaving the C/I I was informed by surveillance units [that] they were still following the Kia. I assisted with the surveillance.

While following Michael I observed him meet several individuals in public parking lots. I observed him pull into these parking lots and park. After parking an individual would get into the passenger seat of the Kia and within a few minutes the individual would get out and then Michal would leave the parking lot. Through my training and experience working narcotic investigations this is a common type of meet for individuals selling narcotics.

After surveilling Michael meet several individuals in public parking lots, surveillance units followed him to a residence located at [an address in] Lakewood.

Detective Darby, who is familiar with the case, observed Michael park his Kia in the driveway and walk in through the front door of the mobile home.

Over the course of this investigation I have observed the Kia Rondo . . . parked in the driveway at [the Lakewood address] and a Toyota Tercel . . . also parked in the

driveway. I have seen these vehicles parked in the driveway on numerous occasions in the early morning, afternoon and late evening times.

I have done numerous hours of surveillance on the residence and also have observed Michael leave the residence driving the Toyota Tercel. I followed him driving the Toyota to the Fred Meyers parking lot located at 72nd St and Pacific Ave. Michael pulled into the parking lot and parked. I observed an individual get into the passenger seat of the vehicle. While watching the vehicle I was able to see Michael holding U.S. currency in his hand. Within a few minutes the individual got out and Michael left the parking lot. Again through my training and experience investigating narcotics this is a common type of meet for individuals selling narcotics.

I ran a criminal history check on Michael W. Wood 09-03-59 and it revealed he had twenty nine convictions to include thirteen felony convictions. Three of the felony convictions are for unlawful possession of a controlled substance and two of the felony convictions are for the unlawful possession of a firearm.

I also contacted the Department of Licensing and they revealed and confirmed Michael W. Wood 09-03-59 provided the [Lakewood address].

Clerk's Papers at 24-25. On December 11, 2015, the Pierce County Superior Court found probable cause to issue a search warrant based on Shaffer's affidavit. The search warrant authorized law enforcement officers to search Wood's person, vehicles, and residence.

On December 21, 2015, officers went to Wood's residence and executed the search warrant. Inside Wood's bedroom officers found a handgun, ammunition, 295.5 grams of methamphetamine, 98.3 grams of heroin, 7.4 grams of cocaine, scales, packaging materials, crib notes, and $2,095 in cash. Additionally, officers found a bottle containing 61 pills of suspected hydrocodone in the glove box of Wood's Kia Rondo.

On August 15, 2016, the State charged Wood by amended information with four counts of unlawful possession of a controlled substance with intent to deliver and one count of first degree unlawful possession of a firearm. The State further alleged that Wood committed each of

the unlawful possession of a controlled substance with intent to deliver charges within 1,000 feet of a school bus route stop and while armed with a firearm.

Before trial, Wood moved to suppress evidence seized from his home, contending that Shaffer's affidavit failed to establish probable cause that evidence of suspected criminal activity would be found in his home. Following a CrR 3.6 hearing, the trial court denied Wood's motion to suppress evidence.

The matter proceeded to a bench trial, after which the trial court found Wood guilty of all the charges against him. The trial court also found that Wood was armed with a firearm when he committed three of his four counts of unlawful possession of a controlled substance with intent to deliver and that he committed those three offenses within 1,000 feet of a school bus route stop. Wood appeals from his convictions.

ANALYSIS

I. SUPPRESSION MOTION

Wood contends that the trial court erred when it denied his CrR 3.6 motion to suppress evidence seized from his home because Shaffer's affidavit failed to establish a nexus between evidence of his suspected criminal activity and his home. We disagree.

We review de novo a trial court's legal conclusion of whether an affidavit supported probable cause to issue a search warrant. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But our de novo review gives great deference to the issuing judge's assessment of probable cause and resolves any doubts in favor of the search warrant's validity. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). When reviewing whether probable cause

supported the issuance of a search warrant, we consider only the information contained within the four corners of the supporting affidavit. *Neth*, 165 Wn.2d at 182.

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, the issuance of a search warrant must be based on probable cause. "Probable cause requires more than suspicion or conjecture, but it does not require certainty." *Chenoweth*, 160 Wn.2d at 476. The affidavit in support of a search warrant application must "set forth sufficient facts to convince a reasonable person of the probability the defendant is engaged in criminal activity and that evidence of criminal activity can be found at the place to be searched." *State v. Lyons*, 174 Wn.2d 354, 359, 275 P.3d 314 (2012). "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing court] is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004).

There must be a "nexus between criminal activity and the item to be seized and between that item and the place to be searched." *Neth*, 165 Wn.2d at 183. At issue here is whether the affidavit contained sufficient facts to establish a nexus between the items to be seized and Wood's home.

In the context of suspected drug activity, our Supreme Court has held that "generalized statements regarding the common habits of drug dealers," standing alone, are insufficient to establish a nexus between the evidence sought and the suspect's home. *State v. Thein*, 138 Wn.2d 133, 149, 977 P.2d 582 (1999). Rather, to establish probable cause to search a suspect's home, the affidavit must set forth specific facts and circumstances from which the issuing court

5

can reasonably conclude that the suspect is probably involved in criminal activity and that evidence of such activity can be found in the suspect's home. *Thein*, 138 Wn.2d at 147. In short, facts asserted in a search warrant affidavit that establish a criminal suspect is probably engaged in drug activity outside the suspect's home, without more, is insufficient to establish probable cause to search the suspect's home. *Thein*, 138 Wn.2d at 141-46.

We determine whether probable cause has been established on a case-by-case basis. *Thein*, 138 Wn.2d at 149. "Facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts." *State v. Dunn*, 186 Wn. App. 889, 897, 348 P.3d 791 (2015).

Here, Shaffer's affidavit stated in relevant part: (1) the confidential informant engaged in a controlled buy of illicit drugs from Wood; (2) after Wood sold the drugs to the confidential informant, he met with other individuals and engaged in behavior that Shaffer believed to be additional drug transactions; (3) Shaffer's belief that Wood engaged in these additional drug transactions were based on his training and experience; (4) after engaging in those additional suspected drug transactions, Wood drove to his residence and entered his home; (5) at a later date, Shaffer observed Wood leave his home, followed him to a parking lot, and saw Wood engage in behavior that Shaffer believed to be a drug transaction based on his training and experience. Shaffer's affidavit contained facts that, when viewed together, were sufficient for the issuing court to conclude that there was a nexus between Wood's suspected drug activity and evidence of such activity in his home.

In contrast with *Thein*, where the search warrant affidavit lacked any facts linking the defendant's suspected drug activity to the defendant's home apart from a generalized statement that drug traffickers commonly conceal evidence of drug activity at their homes, here Shaffer's affidavit stated that officers saw Wood enter his home after engaging in a controlled drug transaction with a confidential informant and subsequent suspected drug transactions. 138 Wn.2d at 150. Shaffer's affidavit further stated that on a separate occasion, he had seen Wood leave his home and engage in an additional suspected drug transaction. From these facts, the issuing court could reasonably conclude that probable cause existed to search Wood's home for evidence of his suspected drug activity.

Wood's reliance on *State v. Goble*, 88 Wn. App. 503, 945 P.2d 263 (1997), and *State v. G.M.V.*, 135 Wn. App. 366, 144 P.3d 358 (2006), is unavailing. In *Goble*, we held that a search warrant lacked probable cause to search the defendant's home where the issuing magistrate had no information to infer that the suspect probably dealt drugs from his home, stored drugs at his home, or transported drugs to or from his home. 88 Wn. App. at 512. In contrast with *Goble*, here the issuing court had information sufficient to infer that evidence of drug activity would probably be found at Wood's home based on Shaffer's statements that police saw Woods going to his home after suspected drug transactions and, on a separate occasion, leaving from his home to engage in a suspected drug transaction.

In *G.M.V.*, Division Three of this court held that defense counsel was not ineffective for failing to move to suppress evidence obtained from a search of a home where the "warrant was to search the place [a person] left from and returned to before and after he sold drugs." 135 Wn.

App. at 372. Wood contends that *G.M.V.* is distinguishable from the present case because he "was never seen leaving from and returning to his residence before *and* after a single drug transaction." Br. of Appellant at 11 (alteration in original). But *G.M.V.* did not create a bright line rule that a suspect must be seen leaving from and returning to a residence after a single drug transaction to establish probable cause to search that residence. Instead, we examine whether probable cause existed to issue a search warrant on a case-by-case basis viewing the totality of facts contained in the supporting affidavit. *Thein*, 138 Wn.2d at 149; *Dunn*, 186 Wn. App. at 897.

Viewing the totality of facts presented in the supporting affidavit here, Shaffer's statements that Wood was seen going to his home after suspected drug transactions and, on a separate occasion, leaving from his home prior to a suspected drug transaction was sufficient to establish probable cause to search his home for evidence of such illegal activity.

## II. SAG

In his SAG, Wood also challenges the trial court's denial of his CrR 3.6 motion to suppress evidence seized from his home. Although we have analyzed and rejected this claim as argued by appellate counsel, we briefly address the arguments raised in Wood's SAG. Wood first argues that Shaffer's affidavit did not establish that he left his home to conduct a suspected drug transaction because Shaffer merely speculated that a drug transaction likely occurred in the parking lot and that his behavior was consistent with lawful activity.

But Shaffer's belief that Wood had engaged in a drug transaction after leaving his home was not based on pure speculation. Rather, Shaffer's affidavit stated that he formed this belief

based on his training and experience after seeing (1) Wood drive in a parking lot, (2) an individual enter Wood's car, (3) Wood handling U.S. currency, (4) the individual leave Wood's car after a few minutes, and (5) Wood drive away from the parking lot. Officers may draw reasonable inferences that a suspect is engaged in unlawful activity based on their training and experience if based on specific facts. *See, e.g.*, *Thein*, 138 Wn.2d at 148 (citing *State v. Graham*, 130 Wn.2d 711, 725, 927 P.2d 227 (1996)). And although Wood's perceived activity in the parking lot may not be sufficient on its own to establish probable cause that he was engaged in criminal activity on that occasion, it was sufficient when viewed together with his other conduct in selling illicit drugs to the confidential informant. *See, e.g.*, *Neth*, 165 Wn.2d at 185 ("[A]*bsent some other evidence of illicit activity*," evidence consistent with lawful conduct does not constitute probable cause to issue a search warrant. (Emphasis added)).

In a supplemental SAG, Wood assigns error to some of the trial court's findings and conclusions following its denial of Wood's CrR 3.6 suppression motion. Wood states that he assigns error to the findings and conclusions to properly preserve his arguments on appeal. But Wood's assignments of error are unnecessary because he challenges only the issuing court's determination of probable cause in support of the warrant to search his home. All of the facts that were before the trial court and the court issuing the search warrant—contained within the four corners of the affidavit in support of the search warrant—are now before this court. And we review de novo whether those facts contained in the four corners of Shaffer's affidavit supported a determination of probable cause to issue a search warrant. *Neth*, 165 Wn.2d at 182.

Because probable cause supported the issuance of a warrant to search Wood's home, the trial court properly denied Wood's motion to suppress. Accordingly, we affirm Wood's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Bjorgen, C.J.

Melnick, J.