# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52506-2-II |
| Respondent, | |
| v. | |
| STAYCEY DARRELL COLLINS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Staycey D. Collins appeals his convictions for two counts of delivery of a controlled substance and one count of possession with intent to manufacture or deliver. Collins argues that the trial court erred by denying his motion to suppress evidence found in his residence because the search warrant was not supported by probable cause. Alternatively, Collins argues that the trial court erred by denying his motion for a *Franks*[1] hearing regarding an omission from the search warrant affidavit. Collins makes similar arguments in his statement of additional grounds (SAG).[2] The trial court did not err by denying Collins' motion to suppress or the motion for a *Franks* hearing.

Collins also appeals his sentence, arguing the trial court's jury instructions regarding the charged aggravating circumstances were a misstatement of the law. Because Collins did not object

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[2] RAP 10.10.

to the jury instructions, we do not consider this argument. Accordingly, we affirm Collins'

convictions and sentence.

FACTS

A.    MOTION TO SUPPRESS/*FRANKS* HEARING

On April 10, 2017, the State charged Collins with one count of possession of a controlled

substance with intent to manufacture or deliver. On June 7, the State amended the information to

include a school bus stop enhancement.

On September 17, 2018, the State filed a second amended information adding two counts

of delivery of a controlled substance. And the State added an aggravated circumstance to all three

counts, alleging that all the counts were major violations of the uniformed controlled substances

act (VUCSA).

On January 25, 2018, before the State filed its second amended information, Collins filed

a motion to suppress evidence found in Collins' home. Alternatively, Collins sought "leave to

later request a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1985)." Clerk's

Papers (CP) at 20. Collins argued that the search warrants authorizing the search of Collins' home

and vehicle were not supported by probable cause because the facts alleged in the affidavits

supporting the search warrant requests did not establish a nexus between the alleged criminal

activity and the place to be searched.

Detective Eric Janson, a Kitsap County Sheriff's Office detective assigned to the West

Sound Narcotics Enforcement Team (WestNET), applied for the search warrants. Probable cause

for the warrants was based on two controlled buys that Detective Janson performed with a police

informant.

Detective Janson described the first controlled buy as occurring during the week of March 20, 2017. Janson and another detective met with the informant prior to the controlled buy and searched the informant and the vehicle for drugs, money, or weapons. A small amount of marijuana was found and held until the controlled buy was completed. The informant arranged to meet Collins at a pre-arranged buy location via text message. The informant completed the controlled buy while under surveillance by police units. After the controlled buy was completed, the informant provided Detective Janson with 3.7 grams of cocaine and stated that Collins exchanged the cocaine for the pre-recorded money provided by the detectives.

The second controlled buy was also conducted during the week of March 20. For this controlled buy, Detective Janson arranged for a surveillance unit to follow Collins from his home to the buy location and then back to Collins' home. Prior to the controlled buy, the informant was searched for drugs, money, and weapons, and none were found. The informant again arranged to meet Collins at a pre-arranged location via text message. The assigned surveillance unit observed Collins leave his house, get into his vehicle, and drive to the controlled buy location. The controlled buy was conducted under police surveillance. After the controlled buy, Detective Janson recovered 3.5 grams of cocaine from the informant. The informant stated she obtained the cocaine from Collins in exchange for the pre-recorded buy money provided by the detectives. Surveillance units followed Collins from the controlled buy location to his residence, where they observed him exit the vehicle and go inside.

In the affidavits for search warrant, Detective Janson noted that the informant was working with the police in exchange for prosecutorial consideration. Detective Janson stated that much of the informant's information had been corroborated by independent sources and, to his knowledge,

3

the informant had not provided any false or misleading information to detectives. Detective Janson also noted that the informant struggled with narcotics addiction and had used narcotics in the past. Detective Janson disclosed the informant's criminal history of two prior drug convictions.

The search warrant requests sought authority to search Collins' residence for controlled substances, records related to the use and sale of narcotics, drug paraphernalia, money and proceeds from the sale of narcotics, financial records demonstrating how drug funds are utilized, telephone records related to co-conspirators or customers, and electronic equipment such as cell phones.

In support of his motion to suppress, Collins argued that the search warrant was not supported by probable cause because there was no allegation that anyone saw or knew of drugs or contraband being stored in Collins' house. Collins also argued that there was no established nexus between evidence of drug possession and Collins' home. And Collins claimed the search warrant was invalid because it was based on material misrepresentations and omissions by the police. However, Collins' motion did not include allegations regarding what misrepresentations or omissions were made or any allegations that the misrepresentations or omissions were intentional or reckless. In fact, Collins motion contains no factual allegations supporting the claim regarding misrepresentations or omissions.

At the suppression hearing, Collins asserted that he was observed making a brief stop to contact another individual on the way from his home to the controlled buy location. The State responded to Collins' assertion by arguing,

> The defendant stopped and made another drug deal before proceeding to this drug deal.

> So I don't know if the defense is trying to claim that per chance that's a *Franks* issue because they did raise *Franks* in their—in their—in their briefing. But it really would add to the probable cause if they had added that additional information. He made a very brief stop where according to the officer's training and experience, they would identify it as another drug deal. And then he went on to make this drug deal before returning directly to the residence.

Verbatim Report of Proceedings (VRP) (April 2, 2018) at 9. Collins disputed that it was a drug deal and instead characterized it as a short stay in a public parking lot. Collins presented no other facts regarding misrepresentations or omissions at the suppression hearing.

The trial court denied Collins' motion to suppress. In its oral ruling, the trial court concluded that the facts alleged in the search warrant affidavits supported a finding of probable cause. And the trial court stated,

> So with that in mind, in terms of the *Franks* issue—I mean I think the prosecution's analysis of the *Franks* issue is correct. I'm not going to prohibit the defendant from—if they have additional information—or come across additional information to present that. But as it stands with the information I have in front of me this morning, there would be insufficient basis for a *Franks* hearing at this time. But whether or not that information comes to light to the defense, they certainly aren't precluded from raising it again with additional information. But based on the information I have before me, there's insufficient facts to support a *Franks* hearing at this time.

VRP (April 2, 2018) at 12. In its written order, the trial court incorporated the affidavits supporting the search warrants. And the trial court made the following relevant conclusions of law,

> [III.] That a nexus existed between the defendant's criminal activity and the place to be searched, the defendant's home, even though the controlled buys did not take place at the residence. Under *State v. G.M.V.*, 135 Wn. App. 366, 144 P.3d 358 (2006), a nexus between the defendant's residence and his criminal drug dealing is established if Officers observe the defendant leave from and return to the residence after he sold drugs. In this case, the Officers conducted surveillance on the defendant's residence. Almost immediately after the informant notified the defendant that she wished to purchase drugs, the defendant left his home, drove to the area of the controlled buy, met with the informant, sold the informant cocaine,

5

and then returned home. This is sufficient information to provide a nexus between the defendant's residence and his drug dealing activity.

[IV.] That the defendant's request for a Frank's hearing is denied because the defendant has not alleged any omission or misrepresentations that would affect the Issuing Magistrate's determination of probable cause.

CP at 92. Collins did not renew his motion for a *Franks* hearing.

B.   TRIAL

The case proceeded to a jury trial on Count I, delivery of a controlled substance (the first controlled buy), Count II, delivery of a controlled substance (the second controlled buy), and Count III, possession of a controlled substance with intent to deliver with a school bus stop enhancement. All three counts also included a major VUCSA aggravating circumstance allegation.

Detective Janson testified at the jury trial to the facts surrounding both controlled buys consistent with the facts presented in the search warrant affidavits as discussed above. Detective Janson also testified that, after the controlled buys were completed, a search warrant was served on Collins' residence. During that search, officers found cocaine and money in Collins' residence. Some of the cocaine was packaged in separately wrapped bags. The officers also found paraphernalia associated with the packaging and sale of drugs. The officers further found a large amount of cocaine during the search.

The trial court gave the jury the following instructions regarding the major VUCSA aggravating circumstance,

Instruction No. 21

If you find the defendant guilty of Delivery of a Controlled Substance as charged in Count I and II, or Possession with intent to deliver a controlled substance as charged in Count III, then you must determine if any of the following aggravating circumstances exist:

6

1) Whether the crime was a major violation of the Uniform Controlled Substances Act

. . .

Instruction No. 23

A major trafficking violation of the Uniform Controlled Substances Act is one which is more onerous than the typical offense. The presence of any of the following factors may identify the offense charged in Count I, II, and III as a major trafficking violation:
Whether the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so; or
Whether the offense involved an attempted or actual sale or transfer of controlled substances in quantities substantially larger than for personal use

CP at 80, 82. Collins did not object to the trial court's jury instructions on the major VUCSA aggravating circumstance.

The jury found Collins guilty of all three counts. The jury also found a major VUCSA aggravating circumstance for all three convictions and that the possession of a controlled substance with intent to deliver was committed within one thousand feet of a school bus route stop.

Collins had no felony criminal history. Therefore, Collins' standard sentence range on the delivery of a controlled substance convictions was 12 months plus 1 day to 20 months and his standard sentence range on the possession of a controlled substance with intent to deliver conviction, including the school bus stop enhancement, was 36 to 44 months. Based on the major VUCSA aggravating circumstance found by the jury, the trial court imposed an exceptional sentence of 68 months confinement.

Collins appeals.

ANALYSIS

A.   MOTION TO SUPPRESS

Collins argues that the trial court erred by denying his motion to suppress because the affidavit supporting probable cause "failed to establish a nexus between suspected drug activity and the residence." Br. of Appellant at 6. Although Collins concedes that there was sufficient probable cause to support the search of Collins' vehicle, he contends that there was not probable cause to search his residence because the "officers did not observe a direct link between any drug activity and Collins' house." Br. of Appellant at 8. However, because there were sufficient facts alleged in the affidavit to support the reasonable inference that the evidence the officer sought would be found in the residence, the trial court did not err in concluding that the warrant to search Collins' residence was supported by probable cause.

We review a trial court's determination of probable cause at a suppression hearing de novo. *State v. Dunn*, 186 Wn. App. 889, 896, 348 P.3d 791, *review denied*, 184 Wn.2d 1004 (2015). Our review is limited to the four corners of the document supporting probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). The information is reviewed as a whole to determine whether a determination of probable cause is supported. *Dunn*, 186 Wn. App. at 896. And we review the supporting document "'in a commonsense manner, rather than hypertechnically.'" *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012) (quoting *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)).

A search warrant may only issue upon a determination of probable cause "based upon facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or that contraband exists at a certain location." *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925

(1995). Probable cause exists as a matter of law if the supporting affidavit contains sufficient facts and circumstances to establish a reasonable inference that the defendant is probably engaged in illegal activity and that evidence of that illegal activity is at the location to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). Therefore, "'probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *Thein*, 138 Wn.2d at 140 (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)). The nexus between the evidence to be seized and the place to be searched must be established by specific facts rather than by generalizations or conclusory predictions. *Thein*, 138 Wn.2d at 146-47.

Here, officers surveilling Collins during the second controlled buy observed that Collins was home at the time the text messages setting up the controlled buy were sent. The officers then observed Collins leave the house and drive to the controlled buy location. And the officers observed Collins go directly back to the residence. Detective Janson sought a search warrant to search the residence, not just for drugs, but also other evidence such as records, money, other proceeds from drug sales, electronic equipment such as cell phones, and drug paraphernalia. The fact that officers observed Collins in the house at the time the text messages were sent allows for the reasonable inference that Collins' cell phone would be found in the house when it was searched. Furthermore, when Collins returned to the residence directly after the controlled buy, there was a reasonable inference that Collins would have taken the money from the controlled buy into the house with him.

Collins asserts that case law stands for the proposition that if there are two places that drugs could be stored, officers must establish a direct link between the place to be searched and the drugs.

9

First, this argument is misplaced because the officers were not simply searching for drugs at the residence, they were searching for various types of evidence and, as explained above, there are facts that allow for the reasonable inference that evidence of drug crimes would be found at the residence. Second, Collins' argument fails because no such rule exists. Collins relies on *Thein* and *Goble* to support his argument. Neither cases establishes that the warrant here was not supported by probable cause.

*Thein* does not apply to this case because, in *Thein*, the affidavit supporting probable cause alleged no specific facts that applied to the defendant's residence. 138 Wn.2d at 138-39. Instead, the officers had evidence that the defendant was supplying drugs to a third party and sought a search warrant for the defendant's house based on the common habits and practices of drug dealers. *Id*. These types of generalizations are insufficient to establish probable cause. *Id.* at 147-48.

Here, however, the officers did not rely on generalizations regarding the common habits or practices of drug dealers to support the determination of probable cause. Instead, the officer directly observed Collins go from his residence to the controlled buy and back to his residence. Thus, unlike *Thein*, there were specific facts here that allowed for the reasonable inference that evidence of drug dealing would be found in Collins' residence.

In *Goble*, officers identified a package at a mail facility that contained methamphetamine addressed to the defendant's Post Office box. 88 Wn. App. at 505. An officer sought a search warrant for the defendant's home. *Id*. at 505-06. Because there was no evidence establishing the defendant was taking drugs from the post office box to his home, the magistrate granted the warrant only on the condition that the package is transported to the defendant's residence. *Id*. at 506-07. The officer observed the defendant pick up the package and walk toward his house. *Id*. at 507.

10

However, officers failed to observe the defendant actually enter the residence with the package. *Id.* The court held that the warrant was not supported by probable cause at the time it was issued because there were no facts that indicated that any evidence would be found at the defendant's home. *Id.* at 512. Instead, the facts only established that the defendant had drugs shipped to a Post Office box. *Id.* In fact, the magistrate recognized this deficiency by imposing a condition on the search warrant. *Id.* Therefore, there were not sufficient facts, at the time the warrant was issued, to allow for a reasonable inference that there was probable cause to search the home. *Id.* at 512-13. Nothing in *Goble* states that a "direct link" is required between the drugs and the residence if the defendant could also be storing drugs in a vehicle. Br. of Appellant at 11.

Here, unlike in *Goble*, surveillance officers had observed Collins leave his residence, go to the controlled buy, and return home. There were specific facts that allowed for the reasonable inference that the evidence officers sought was in Collins' residence. Thus, because there was a nexus between the evidence to be seized and the place to be searched, probable cause was established.

Because the warrants were supported by probable cause, the trial court did not err by denying Collins' motion to suppress. Accordingly, we affirm the trial court's order denying Collins' motion to suppress.

C.    MOTION FOR *FRANKS* HEARING

1.    Direct Appeal

Collins also argues that the trial court erred by denying his motion for a *Franks* hearing. Collins asserts that the fact that he made a stop in between the time he left his house and the time of the controlled buy constituted a material omission from the search warrant affidavit. The State

11

concedes that the omission in the affidavit supporting probable cause was material. For the reasons explained below, we reject the State's concession. Because the omission was not material to the finding of probable cause, the trial court did not err by denying the motion for a *Franks* hearing.

We review the trial court's denial of a *Franks* hearing for an abuse of discretion. *State v. Wolken*, 103 Wn.2d 823, 830, 700 P.2d 319 (1985). Under the Fourth Amendment of the United States Constitution, omissions in a warrant affidavit may invalidate the warrant if the defendant establishes that they are material and made in reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). To be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that the affiant deliberately or recklessly made material misstatements in a search warrant. *State v. Chenoweth*, 160 Wn.2d 454, 478-79, 158 P.3d 595 (2007).

An omission is material if it was necessary to the determination of probable cause. *State v. Copeland*, 130 Wn.2d 244, 277, 922 P.2d 1304 (1996). To establish materiality, the defendant "must show that probable cause to issue the warrant would not have been found if the omitted material had been included." *Id.*

The omission here was not material to the probable cause determination. Collins argues that leaving out the brief stop that he made on the way to the second drug buy eliminates the nexus between the criminal activity and his house. Br. of Appellant at 17 ("the magistrate would likely have been concerned that this individual who got in the car provided Collins with the drugs he ultimately sold in the controlled buy rather than those drugs coming from Collins' residence."). But this is incorrect.

Here, the stop on the way to the controlled buy was brief and the officers observed only a short exchange. There is a reasonable inference that Collins was delivering drugs to another customer rather than picking up a supply of drugs as Collins implies.

And it is undisputed that Collins returned directly home after he completed both controlled buys. In order to support probable cause to search the house there only needs to be sufficient facts to support a reasonable inference that some evidence of the criminal activity would be found in the house. Even if, as Collins implies, the stop indicates that there would be no drugs found in the house, it is entirely reasonable to infer that other evidence of drug dealing, such as records, money, or proceeds from drug sales, and Collins cell phone would be found in the house because Collins returned directly to the house after completing the controlled buy.

Because the affidavits establish probable cause to search Collins' residence, even with the additional fact considered, the omitted fact was not material to the determination of probable cause. Therefore, the State's concession that the omission was material is not well-taken and we reject it. The trial court did not abuse its discretion by determining that the omitted fact was immaterial to the determination of probable cause and did not warrant a *Franks* hearing.

2.      Statement of Additional Ground (SAG)

Collins also raises in his SAG a multitude of additional facts he believes were improperly omitted from the warrant. However, none of the facts Collins relies on to support his claim were presented to the trial court at the motion for a *Franks* hearing.

We do not review issues raised for the first time on appeal. RAP 2.5(a). Because the evidence on which Collins relies was not before the trial court when it denied the motion for a *Franks* hearing, it is being raised for the first time on appeal.

13

However, RAP 2.5(a)(3) provides an exception for a "manifest error affecting a constitutional right." "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?'" *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)).

Here, a *Franks* hearing implicates protections guaranteed by the Fourth Amendment and, therefore, could be considered an error of constitutional magnitude. However, nothing in Collins' SAG claim provides any information that would show that the officers acted intentionally or with reckless disregard for the truth. *Chenoweth*, 160 Wn.2d at 478-79. And because intent or reckless disregard for the truth cannot be inferred from the omissions, nothing provided in Collins' SAG would entitle him to a *Franks* hearing. *Chenoweth*, 160 Wn.2d at 481. Therefore, the alleged error is not manifest and we decline to address it.

C.    AGGRAVATING CIRCUMSTANCES

Collins argues that the trial court's jury instructions on the major VUCSA aggravating circumstance were a misstatement of the law. However, Collins did not object to the jury instructions and makes no argument as to why we should review the jury instructions for the first time on appeal. Accordingly, we decline to address Collins' argument.

"Generally, a party who fails to object to jury instructions below waives a claim of instructional error on appeal." *State v. Edwards*, 171 Wn. App. 379, 387, 294 P.3d 708 (2012); RAP 2.5(a). RAP 2.5(a)(3) provides an exception for a manifest error affecting a constitutional right. "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party

No. 52506-2-II

demonstrated that the error is manifest?'" *Grott*, 195 Wn.2d at 267 (quoting *Kalebaugh*, 183 Wn.2d at 583).

Here, Collins' does not present any argument or authority supporting review of the major VUCSA aggravating circumstance instructions under RAP 2.5(a)(3). In fact, Collins' briefing fails to even acknowledge that Collins did not object to the jury instructions he now asserts are error. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998). Because Collins has presented no reasoned argument to support review under RAP 2.5(a)(3), we decline to address Collins's assignment of error regarding the jury instructions.[3]

---

[3] Even if we addressed the merits of Collins's assignment of error, his challenge to the jury instructions would fail. Collins argues that the language in Jury Instruction No. 23 misstated the law. The jury instruction stated,

> A major trafficking violation of the Uniform Controlled Substances Act is one which is more onerous than the typical offense. The presence of any of the following factors may identify the offense charged in Count I, II, and III as a major trafficking violation:
> Whether the offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so[.]

CP at 82. This is consistent with the language of RCW 9.94A.535(3)(e) which states, in relevant part, that it is an aggravating circumstance supporting an exceptional sentence if,

> The current offense was a major violation of the Uniform Controlled Substances Act, chapter 69.50 RCW (VUCSA), related to trafficking in controlled substances, which was more onerous than the typical offense of its statutory definition: The presence of ANY of the following may identify a current offense as a major VUCSA:
> (i) The current offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so[.]

15

No.  52506-2-II

CONCLUSION

The trial court did not err by denying Collins's motion to suppress the evidence found in his residence or Collins's motion for a *Franks* hearing.  And Collins waived his challenge to the trial court's jury instructions regarding the major VUCSA aggravating circumstance.  Accordingly, we affirm Collins's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, C.J.

We concur:

Maxa, J.

Cruser, J.

_____

Accordingly, the jury instruction was not a misstatement of the law.